RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0011p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MICHAEL A. CHIRCO; DOMINIC J. MOCERI,
　　　　　　　　*Plaintiffs-Appellants,*

　　　*v.*

CROSSWINDS COMMUNITIES, INC., and BERNARD
GLIEBERMAN,

　　　　　　　　*Defendants-Appellees.*

No. 05-1715

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-74600—Denise Page Hood, District Judge.

Argued: June 6, 2006

Decided and Filed: January 10, 2007

Before: DAUGHTREY and COLE, Circuit Judges; GRAHAM, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen F. Wasinger, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, for Appellants. Douglas P. LaLone, WARN, HOFFMANN, MILLER & LALONE, Auburn Hills, Michigan, for Appellees. **ON BRIEF:** Stephen F. Wasinger, WASINGER, KICKHAM & HANLEY, Royal Oak, Michigan, Julie A. Greenberg, GIFFORD, KRASS, GROH, SPRINKLE, ANDERSON & CITKOWSKI, Troy, Michigan, for Appellants. Douglas P. LaLone, WARN, HOFFMANN, MILLER & LALONE, Auburn Hills, Michigan, Bernard J. Cantor, HARNESS, DICKEY & PIERCE, Troy, Michigan, for Appellees.

_____

## OPINION

_____

　　　MARTHA CRAIG DAUGHTREY, Circuit Judge. The plaintiffs, Michael Chirco and Dominic Moceri, are Detroit-area real estate developers who brought suit against Crosswinds Communities and its principal shareholder, Bernard Glieberman, alleging that the defendants had copied the plaintiffs' architectural design for a "twelve-plex" condominium building, which was

_____
[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

protected by copyright and to which they had exclusive rights of construction. The district court granted summary judgment to the defendants, finding that they had been prejudiced by unnecessary delay between the time the plaintiffs had learned that construction was planned (or, alternatively, the time that construction was undertaken) and the time that the complaint was filed, even though the action was filed within the three-year statute of limitations provided by the Copyright Act in 17 U.S.C. § 507(b). On appeal, the dispositive question is whether the equitable doctrine of laches can be held to trump the statutorily-prescribed period for filing suit under § 507(b). To the extent that the plaintiffs in this case are seeking only monetary damages and injunctive relief, we give effect to the Sixth Circuit's presumption that the statute of limitations must prevail. However, to the extent that the relief sought is destruction of the condominium complex that allegedly infringes the plaintiffs' copyright, the facts before us suggest that this is indeed the extraordinary case in which the defense of laches is properly interposed. We thus remand the case to the district court for clarification of the nature of the relief sought in this action and for such further proceedings as are appropriate.

## FACTUAL AND PROCEDURAL BACKGROUND

Working with an architectural firm, the plaintiffs designed plans for residential developments that sought to maximize space utilization and aesthetic appeal. According to statements made by Moceri in an affidavit:

14.    [The plans that were developed] describe a unique twelve unit residential building. The fronts and backs are identical in appearance, so there is no "back" of the building. There are four units on the first floor as well as a row of six single car garages on the first floor at each end of the building. There are eight units on the second floor, of which 4 are over garages. Each of the four second floor units which are constructed over a garage are placed on three garages, which allows the building to be built as four distinct quadrangles with fire rated walls separating each quadrangle. Each of the twelve garages has direct access to its assigned residential unit without requiring the occupants to go outside or use a common hallway to access their units.

15.    One of the unique aspects of the [plans] is the way that it can occupy a site. Because the garages are on the side of the building and because the garages of adjoining buildings face each other, the driveway orientation is quite compact, which allows the buildings to be spaced just 64 feet from each other. This allows relatively high density of the units, and an efficiency of infrastructure design and implementation, thus allowing significant cost savings for this work.

16.    Because of the unique utilization of space and its architectural design, the . . . condominiums can be built with high density but with tremendous appeal to governmental authorities, customers, and neighboring property owners.

The plaintiffs obtained copyrights on November 28, 1997, for the architectural plans for two developments known as Knollwood Manor and Aberdeen Village, as well as for the constructed buildings at those developments. Chirco and Moceri allege that, on December 31, 2000, Glieberman, as an officer and agent of Charter Oak Homes and American Heritage Homes, began building the Heritage Condominium development in Waterford Township, Michigan, according to plans based directly upon or copied from the copyrighted plans and architectural works for Knollwood Manor and Aberdeen Village. Only three months later, on April 1, 2001, the plaintiffs filed suit against Glieberman, Charter Oak Homes, and American Heritage Homes in federal district court, alleging copyright infringement and seeking injunctive and monetary relief.

During the discovery period for that federal law suit, *Chirco v. Charter Oak Homes, Inc.* (No. 01-71403), the plaintiffs obviously learned of Glieberman's intention to build yet another development that allegedly infringed upon the plaintiffs' copyrights, because plans for a Glieberman project known as Jonathan's Landing in Howell, Michigan, were found in the plaintiffs' files, dating from April 16, 2001. Six months later, on October 16, 2001, the plaintiffs made a request of local officials for copies of the plans for the Jonathan's Landing project through the Michigan Freedom of Information Act. Those plans were then sent to the plaintiffs a week later, but no action was taken by Chirco and Moceri, even in May 2002, when Glieberman and Crosswinds Communities, Inc., broke ground for the 252-unit development. In fact, the plaintiffs took no steps to prevent the second alleged infringement of their copyrights until November 14, 2003, when the plaintiffs filed a second federal law suit against Glieberman, *Chirco v. Crosswinds Communities, Inc.* (No. 03-74600). By that time, 168 of the planned 252 units had been constructed, 141 of them sold, and 109 already occupied by the buyers.

Eventually, the defendants filed a motion for summary judgment in the second law suit, *Chirco v. Crosswinds Communities, Inc.*, arguing that the plaintiffs' attempts to recover for copyright infringement were barred by the equitable doctrine of laches. The district judge agreed, ruling that the plaintiffs knew of the Jonathan's Landing construction for at least 18 months prior to the filing of the federal action. The district court further stated:

> Defendants have shown prejudice in this case. As of the filing of the Complaint, more than 168 units were built, 109 of which were occupied. Plaintiffs have not shown why they did not diligently pursue the claim as to Jonathan's Landing as early as May 9, 2002, or perhaps earlier. Plaintiffs have not shown that the Jonathan's Landing case was in fact covered in Case No. 01-71403, a case in which Crosswinds is not a party. There is no mention of the Jonathan's Landing project in the Amended Complaint. Defendants had no notice that Plaintiffs were going to sue them regarding this project.

Consequently, the district judge granted the defendants' summary judgment motion and dismissed case 03-74600 with prejudice. The plaintiffs now appeal that ruling.

## DISCUSSION

Ordinarily, an appellate panel reviews "a district court's resolution of a laches question for an abuse of discretion." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 589 (6th Cir. 2001). However, when a reviewing court is presented with a threshold question of law as to whether the laches doctrine is even applicable in a particular situation, as we are here, our review is *de novo*. *See*, *e.g.*, *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 623 (6th Cir. 2003).

In this circuit, laches is understood to be "a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001). Thus:

> [L]aches does not result from a mere lapse of time but from the fact that, during the lapse of time, changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced. By his negligent delay, the plaintiff may have misled the defendant or others into acting on the assumption that the plaintiff has abandoned his claim, or that he acquiesces in the situation, or changed circumstances may make it more difficult to defend against the claim.

11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2946 at 117 (2d ed. 1995) (quoting de Funiak, *Handbook of Modern Equity* § 24 at 41 (2d ed. 1956)).

The plaintiffs insist that laches is not available as an affirmative defense in this case, however, because the Copyright Act itself references a specific period during which actions under the statute may be brought, and because Chirco and Moceri filed their complaint within that time frame. Indeed, 17 U.S.C. § 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." Because the plaintiffs filed their complaint regarding the Jonathan's Landing project on November 14, 2003, the statutory limitations period would ordinarily allow the federal courts to examine any claim that accrued on or after November 14, 2000, at least five months before the defendants' development plans were found in the plaintiffs' possession, and 18 months before the actual initiation of construction activities.

The rationales underlying the plaintiffs' position on the application of the laches doctrine in a copyright case have been summarized by the Fourth Circuit in its decision in *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001):

> First, laches is a doctrine that applies only in equity to bar equitable actions, not at law to bar legal actions. Second, we note that, in any event, in connection with the copyright claims, separation of powers principles dictate that an equitable timeliness rule adopted by courts cannot bar claims that are brought within the legislatively prescribed statute of limitations.

Thus, ruled the court, "when considering the timeliness of a cause of action brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute." *Id.* at 798.

Other courts have likewise openly questioned the legality of supplanting statutory limitations periods in various contexts. For example, in *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946), the United States Supreme Court, reviewing an action brought pursuant to § 16 of the Federal Farm Loan Act, 12 U.S.C. § 812, stated in dicta, "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." *See also United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations [set forth in the National Prohibition Act] is no defense at law.").

The United States Court of Appeals for the Tenth Circuit has noted in a *criminal* proceeding that "[b]ecause laches is a judicially created equitable doctrine, whereas statutes of limitations are legislative enactments, it has been observed that in deference to the doctrine of separation of powers, the Supreme Court has been circumspect in adopting principles of equity in the context of enforcing federal statutes." *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1207-08 (10th Cir. 2001) (quotation marks, citations, and alterations omitted). In a *civil* context, the Tenth Circuit has also ruled that "[r]ather than deciding cases on the issue of laches, courts should *generally* defer to the three-year statute of limitations, 17 U.S.C. § 507(b), provided by the Copyright Act." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 950 (10th Cir. 2002) (emphasis added).

The *Jacobsen* court did recognize, however, that under different circumstances, "a court can apply laches in a copyright case." *Id.* at 951 (citing *Jackson v. Axton*, 25 F.3d 884, 888 (9th Cir. 1994), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 531-32, 534 (1994)). Indeed, the Ninth Circuit later engaged in the analysis of a laches defense in another copyright

infringement case, *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1036-42 (9th Cir. 2000), despite the Copyright Act's inclusion of its own statute of limitations on causes of action. The following year, the Ninth Circuit again discussed the laches defense to a copyright infringement case, citing for justification Learned Hand's ruling in *Haas v. Leo Feist, Inc.*, 234 F. 105, 108 (S.D. N.Y. 1916):

> It must be obvious to every one familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success. Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win.

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).

The Sixth Circuit has carved out a middle ground between the Fourth Circuit's strict prohibition on application of the laches doctrine in cases involving a statute with an explicit limitations provision and the somewhat more expansive application of the doctrine by the Ninth Circuit. We have, for example, recognized that:

> Several reasons underlie the use of the statutory period as the laches period. It enhances the stability and clarity of the law by applying neutral rules and principles in an evenhanded fashion rather than making the question purely discretionary. It also requires courts to make clear distinctions between threshold or special defenses or pleas in bar and the merits of the case. It enhances the rationality and objectivity of the process by preventing courts from short circuiting difficult issues on the merits by confusing or conflating the merits of an action with other defenses.

*Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985). Indeed, in numerous decisions, not involving claims made pursuant to the Copyright Act, we have affirmed the rule that if the "statute of limitation has not elapsed, there is a strong presumption that plaintiff's delay in bringing the suit for monetary relief is reasonable. Only rarely should laches bar a case before the . . . statute has run." *Id.* at 366 (presumptive effect should have been given to three-year statute of limitations applicable to trademark infringement action brought pursuant to the Lanham Act, which does not contain its own limitations period). *See also Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 550 (6th Cir. 2003) (presumption that trademark infringement action is alive if brought within analogous statute of limitations period); *Herman Miller*, 270 F.3d at 321 (same as *Tandy Corp.*); *Patton v. Bearden*, 8 F.3d 343, 348 (6th Cir. 1993) ("strong presumption that laches will not apply when the analogous state statute of limitations in contract action has not run, absent compelling reason"); *Elvis Presley Enters.*, 936 F.2d at 894 (strong presumption in trademark infringement case that delay within statute of limitations period is reasonable absent "compelling reasons").

We have not, however, ruled out invocation of the equitable doctrine when an applicable statute otherwise references an explicit limitations period. Although we have sought to restrict such use to the most compelling of cases, we have explicitly recognized that the doctrine of laches *can* be applied in copyright infringement cases. In *Hoste v. Radio Corporation of America*, 654 F.2d 11, 12 (6th Cir. 1981), for example, even when we reversed a district court ruling that barred recovery for the plaintiff by application of laches within the statute of limitations period, we did not rule that the laches doctrine was *always* inapplicable in such a situation. Rather, the panel simply noted that "[t]he defendants filed no affidavits in support of their motion for summary judgment. Thus there was no evidence of prejudice to them by reason of the plaintiff's delay in filing this action." *Id.* The court therefore remanded the matter for further development of the salient issues. Additionally, in *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 783 n.13 (6th Cir.), *cert. denied*, 126 S.Ct. 374 (2005), we noted, "Although circuits are split as to whether laches

is available as a defense under the Copyright Act, laches is available as an affirmative defense in a copyright action in the Sixth Circuit." (Citations omitted.)

The plaintiffs urge us to reject that proposition, arguing that in *Broadcast Music*, the statement is mere dicta. Perhaps so, but in this instance, it constitutes dicta that is fated to be followed. As has the Seventh Circuit, we conclude that a flat proscription such as that invoked by the Fourth Circuit against the defense of laches in cases involving a federal statutory claim is both unnecessary and unwise. The Seventh Circuit, presented with a claim pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, reasoned that "just as various tolling doctrines can be used to lengthen the period for suit specified in a statute of limitations, so laches can be used to contract it." *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002). Indeed, laches can be argued "regardless of whether the suit is at law or in equity, because, as with many equitable defenses, the defense of laches is equally available in suits at law." *Id.* We have little hesitation in adopting the Seventh Circuit's philosophy as the sounder approach.

Because the equitable doctrine of laches can, therefore, be applied in copyright cases in this circuit in what can best be described as unusual circumstances, our first task in this case is to determine whether the plaintiffs were less than diligent in pursuing their copyright infringement claim against Crosswinds Communities, Inc., and Bernard Glieberman. If we conclude that an inordinate delay in fact occurred, we must then decide whether the failure of the plaintiffs to file suit in a timely manner resulted in *undue* prejudice to the alleged infringers.

The parties do not dispute that the statute of limitations for a copyright infringement action is three years and that the plaintiffs' filing of Case No. 03-74600 on November 14, 2003, would ordinarily permit the plaintiffs to recover for any infringements that could be proven to have occurred after November 14, 2000. The parties also agree that the plaintiffs filed a copyright infringement action against Charter Oak Homes, American Heritage Homes, and Bernard Glieberman in another matter -- Case No. 01-71403 -- on April 1, 2001, three months after the defendants began work on their Heritage Condominium project in Waterford Township, Michigan. Only two weeks after the filing of that first law suit, *plans* for the Jonathan's Landing development by defendants Crosswinds Communities, Inc., and Bernard Glieberman in Howell, Michigan, were known to be in the plaintiffs' files. Nevertheless, the plaintiffs made no effort to amend their complaint in Case No. 01-71403 to reference specifically the new, allegedly infringing development ideas. Approximately six months later, on October 22, 2001, the plaintiffs received copies of the actual plans filed by the defendants with local officials for the Jonathan's Landing project. Still, no action was taken by Chirco and Moceri to enjoin that new project because, according to the plaintiffs, they believed that any injunction issued in the Waterford Township suit would also cover the Jonathan's Landing development and because no actual infringement of the plaintiffs' copyrights had yet occurred.

In May 2002, defendants Crosswinds Communities and Glieberman broke ground on the Jonathan's Landing development, dispelling any doubt that the defendants intended to proceed with the project and indicating clearly that the defendants did not believe the new development was covered by the initial suit filed to enjoin the Waterford Township construction. Even so, the plaintiffs gave no indication that they were being harmed by the project. Furthermore, the record on appeal is clear that Chirco and Moceri were aware of the activities at Jonathan's Landing. First, all the developments being marketed by the plaintiffs and by the defendants were located in the general vicinity of Detroit; consequently, arduous and expensive travel would not have been necessary to observe the activities that were being undertaken. Second, on May 9, 2002, the plaintiffs indicated their knowledge of the Jonathan's Landing/Howell, Michigan, project and its progress by posing questions about that development at a deposition connected with the initial law suit concerning the Waterford Township development.

Still, for 18 more months, Chirco and Moceri took no overt steps to halt the defendants' construction project in Howell. Only on November 14, 2003, did the plaintiffs finally file suit against Crosswinds Communities, Inc., and Glieberman, presumably in an effort to protect "zealously" the rights they claimed to have been granted by statute. Despite the fact that the plaintiffs filed suit over an alleged infringement concerning *the Waterford Township project* only three months after commencement of construction activities, they argue now that the 18-month hiatus between groundbreaking at Jonathan's Landing and the initiation of this suit is still well within the copyright statute's three-year limitations period and should not, therefore, restrict their ability to seek relief under the provisions of the Copyright Act.

To the extent that the plaintiffs seek only the monetary damages and injunctive relief allowed by the Copyright Act for violations of the statute's provisions, *see* 17 U.S.C. § 502 (allowing injunctive relief to prevent or restrain infringement of a copyright); § 503 (permitting destruction or disposition of all copies made or used in violation of a copyright owner's rights); § 504 (providing for actual damages and profits or statutory damages for copyright infringement); § 505 (recognizing the right to recover costs and attorney's fees), we cannot conclude that the defendants were *unduly* prejudiced by the plaintiffs' delay in filing this cause of action. Even though we might well debate the wisdom of a three-year statute-of-limitations period that would permit the extensive construction that occurred in this case before the filing of a complaint, the resolution of that debate, under our tripartite system of government, is committed to the discretion of the legislature.

To the extent, however, that the relief sought by the plaintiffs exceeds what might otherwise be considered just, we recognize that a statutory limitation period on filing suit need not always trump equitable principles. *See*, *e.g.*, *Jacobsen*, 287 F.3d at 950 ("courts should *generally* defer to the three-year statute of limitations . . . provided by the Copyright Act") (emphasis added); *Rodriguez-Aguirre*, 264 F.3d at 1208 ("it is possible, *in rare cases*, that a statute of limitations can be cut short by the doctrine of laches") (emphasis added); *Elvis Presley Enters.*, 936 F.2d at 894 (defendant "must articulate '*compelling reasons*' in support of his laches claim") (emphasis added); *Tandy Corp.*, 769 F.2d at 365 ("*in the absence of unusual circumstances*, a suit will not be barred before the analogous statute has run") (emphasis added). In this matter, despite the plaintiffs' knowledge of the defendants' plans and intentions, Chirco and Moceri deliberately delayed as those plans were submitted to local officials as part of the permitting process, as ground was broken on the project, as advertisements about the development were disseminated, as construction on Jonathan's Landing began, as 168 of the planned units were completed, as the defendants sold 141 of those condominiums, and as 109 individuals or families actually occupied what they hoped to make their homes. Only at that point, more than two-and-one-half years after having plans for Jonathan's Landings in their files, did the plaintiffs see fit to file their copyright infringement suit, requesting not only money damages and an injunction against future infringement, but also the destruction of "all architectural works which have been built using plans which infringe the Copyrighted Materials." Such a request smacks of the inequity against which Judge Hand cautioned in *Haas* and which the judicial system should abhor. We thus affirm the district court's determination that the plaintiffs' inordinately lengthy delay in filing this suit makes any effort to procure the destruction of buildings already occupied, sold, or substantially constructed unduly prejudicial to the defendants.

## CONCLUSION

In most cases, efforts by a plaintiff to obtain the monetary or injunctive relief authorized by statute within the limitations period provided by the Copyright Act will be allowed to proceed. In those unusual cases, however, when the relief sought will work an *unjust* hardship upon the defendants or upon innocent third parties, the courts, as a co-equal branch of the federal government, must ensure that judgments never envisioned by the legislative drafters are not allowed to stand. We have thus previously indicated that the equitable doctrine of laches may be raised as a defense

in some copyright infringement suits brought within this circuit, and we reemphasize that point today. Because the defendants have established, with uncontroverted facts, that the plaintiffs knew of the defendants' challenged construction plans and activities and yet failed to take readily-available actions to abate the alleged harm, and because the defendants and innocent third parties have been unduly prejudiced by that inaction, we AFFIRM the judgment of the district court insofar as it dismisses the plaintiffs' efforts to mandate the destruction of the Jonathan's Landing project. In all other respects, we REVERSE the judgment below and REMAND this matter to the district court for such further proceedings as may be appropriate in light of this opinion.