NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0792n.06

Case No. 08-1574

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Dec 16, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| LABORERS' PENSION TRUST FUND - DETROIT AND VICINITY, Trustees of; LABORERS' AND POURED CONCRETE WORKERS' INSURANCE FUND, Trustees of; LABORERS' AND POURED CONCRETE WORKERS' INDUSTRY STEWARD FUND, Trustees of; LABORERS' ANNUITY FUND - DETROIT AND VICINITY, Trustees of; MICHIGAN LABORERS' TRAINING FUND, Trustees of; LABORERS' VACATION AND HOLIDAY TRUST FUND - DETROIT AND VICINITY, Trustees of, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> ROCWALL COMPANY, <br><br> Defendant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: BATCHELDER, Chief Judge; BOGGS and COOK, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.** In this action brought under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, the trustees of various multi-employer fringe benefits plans ( "Funds" or "Plaintiffs") seek satisfaction from Rocwall Company ("Rocwall" or "Defendant") for its subcontractors' alleged delinquent contributions. A provision of the collective bargaining agreement ("CBA") between Rocwall and

Locals 334 and 1076 (collectively, "the Union") makes Rocwall surety for the contributions of its subcontractors. Another provision of the CBA sets a 90-day time limit for the Union to make claims of delinquent contributions. Rocwall filed for summary judgment, claiming the time limit applied to the Funds as well as the Union. The district court held that the contractual time limit was not a valid defense that Rocwall could assert against the Funds. We AFFIRM.

## I.

The following factual summary comes from the district court's opinion and order denying Rocwall's motion for partial summary judgment.

> Plaintiffs are trustees of various multi-employer fringe benefits plans which are governed by the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Rocwall is a signatory to the collective bargaining agreement (CBA) that was established between the Poured Concrete Wall Association (the Association), of which Rocwall is a member, and Locals 334 and 1076 (collectively known as "the Union"). The CBA required Rocwall's subcontractors to make contributions to the fringe benefits funds that are sponsored by the Association and the Union, with Rocwall acting as a surety if, and when, those payments are not made. As relevant, twelve Rocwall subcontractors allegedly failed to make fringe benefit contributions to Plaintiffs between 2001 and 2005. On July 17, 2006, Plaintiffs issued an audit for the period of January 2001 through September 2005, and claimed that Rocwall owed them $256,146.85 because of the failures of Rocwall's subcontractors to make fringe benefits contributions.

> On August 27, 2006, the Union filed a grievance against Rocwall seeking to hold it responsible for the delinquent fringe benefits contributions in question. Rocwall responded with a timely request for a meeting to discuss the grievance. During the exchange, Rocwall and the Union apparently agreed that the contributions were subject to Article XIV of the CBA, and that the Union had failed to comply with a 90-day notice provision. This apparently led the Union to dismiss its grievance. Plaintiffs then filed this lawsuit in May 2007 seeking the known unpaid indebtedness of $256,146.85, an order that Defendant submit itself to an audit to determine Defendant's total indebtedness from January 2001 to the present, and permission to amend the award to account for the additional amounts that the audit would reveal, as well as costs, interest, and attorney fees.

> Rocwall filed a motion for partial summary judgment, arguing that the CBA's 90-day time

period for filing claims for back contributions bound the Funds as well as the Union. The district court denied the motion on the ground that the CBA notice provision was not a valid defense that Rocwall could assert against the Funds. Rocwall filed a motion for reconsideration, which the district court denied. Rocwall then filed a motion to certify an interlocutory appeal, which the court granted. We subsequently granted permission to appeal.

## II.

We review de novo the district court's grant or denial of summary judgment. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir.2006). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.

Rocwall's sole argument on appeal is that the district court erred in holding that Rocwall could not raise the CBA's notice provision as a defense against the Funds. In denying summary judgment for Rocwall, the court noted that "there are severe limitations imposed on the availability of contract defenses in trust fund collection cases such as this one" and held that "there are only three defenses available to Rocwall: (1) the pension contributions are illegal, (2) the collective bargaining agreement is void *ab initio*, as where there is fraud in the execution, and (3) the employees have voted to decertify the union as their bargaining representative, thus voiding the union's CBA." Because Rocwall had not asserted any of these defenses, the court denied Rocwall's motion.

Section 515 of ERISA provides: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

3

agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. We have explained that "[t]his language was added to ERISA 'to simplify delinquency collection' by freeing pension and welfare funds from defenses that pertain to the unions' conduct." *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 460 (6th Cir. 1989) (quoting *Robbins v. Lynch*, 836 F.2d 330, 333–34 (7th Cir. 1988)).

If employers could raise contract defenses pertaining to the union's conduct, then ERISA-governed funds would have to get their money from other participating employers or else not be able to pay all benefits due under their plans. For example, in *Behnke* we held that "[a] claim that the union has promised not to collect a payment called for by the agreement is not a good answer to the trustees' suit . . . ." *Id.* Quoting the Seventh Circuit, we explained:

> Multi-employer pension and welfare plans would be in a bind if . . . flaws in the formation cut off third-party claims. Plans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits. Multi-employer plans are defined-contribution in, defined-benefit out. Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize—perhaps because employers go broke, perhaps because they are deadbeats, perhaps because they have a defense to the formation of the contract. If some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised. Costs of tracking down reneging employers and litigating also come out of money available to pay benefits. The more complex the litigation, the more the plan must spend. Litigation involving conversations between employers and local union officials—conversations to which plans are not privy—may be especially costly, and hold out especially great prospects of coming away empty-handed . . . .

*Id.* at 460–61 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Svc., Inc.*, 870 F.2d 1148, 1151 (7th Cir. 1989) (en banc)). Likewise, the Ninth Circuit has observed: "In recognition of the fact that millions of workers depend upon employee benefit trust funds for their

retirement security, Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly." *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986).

The rationale of the cited cases is that multi-employer trust funds are entitled to rely on an employer's promises to make contributions to the funds, irrespective of any breach or omission by the union. The funds often are not in a position to know what is going on between the employer and the union, and the union may have interests that differ from or are inimical to the funds' interests.

Here, Rocwall does not argue that the Union is in breach, that the Union made oral promises contrary to the CBA's terms, or that the Union tricked it into signing the CBA. Instead, it attempts to enforce Article XIV of the CBA, which provides in part:

> If such notice [of the subcontractors the Contractor will use] is given, or if the Union otherwise acquires actual knowledge that a particular subcontractor is working for a Contractor, the Contractor will become surety for and assume all obligations for that subcontractor if the subcontractor does not pay all of the wages, fringe benefits and other conditions called for by this Agreement *so long as the Union files a Complaint against the Contractor* within ninety (90) days of the day on which the wages were due but were not paid or, in respect to fringe benefit contributions, *within ninety (90) days of the end of the month in which the contributions were due and not paid*. . . . The obligations of this Article shall be enforced by the Union and those claiming by or under this Agreement solely by and under the provisions of Article X, Complaints.

(Emphasis added). Under this provision, once the Union has actual knowledge of Rocwall's using a particular subcontractor, the Union has just 90 days from the due date of the subcontractor's contribution to file a claim that Rocwall is responsible for making the contribution on behalf of the subcontractor.

Rocwall's attempt to enforce the notice provision against the Funds raises the same types of problems we discussed in *Behnke*. According to the CBA, Rocwall is to provide a list of its

subcontractors to the Union, not to the Funds. And absent a list, the Funds usually will have no reason to know which subcontractors Rocwall is using, and thus have no opportunity to discover subcontractors' delinquencies absent an audit. Rocwall's argument thus makes the Funds dependent on the Union's diligence in monitoring Rocwall's use of subcontractors, placing on the Funds the very burden that Section 515 was meant to alleviate.

## IV.

Accordingly, we **AFFIRM** the district court's judgment denying partial summary judgment to Rocwall.