RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0072p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

OPERATING ENGINEERS LOCAL 324 HEALTH CARE
PLAN, et al.

                  *Plaintiffs-Appellants*,

     *v*.

G & W CONSTRUCTION COMPANY; GARY NOLLAR,

                  *Defendants-Appellees*.

No. 12-1786

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-10494—Victoria A. Roberts, District Judge.

Decided and Filed:  April 20, 2015

Before: MOORE, KETHLEDGE, and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Robert A. Farr, Jr., ROBERT A. FARR PLLC, Novi, Michigan, for Appellants.
Neil J. Juliar, CONLIN, MCKENNEY & PHILBRICK, P.C., Ann Arbor, Michigan, for
Appellees.

─────────────────

**OPINION**

─────────────────

     JANE B. STRANCH, Circuit Judge.  Nine multi-employer pension and welfare fringe
benefit trust funds (the Funds) sued G&W Construction Company (G&W) and its president,
Gary Nollar, to recover delinquent fringe-benefit payments under a contract between G&W and
Operating Engineers Local 324 (the Union).  The defendants raised affirmative defenses of
laches, estoppel, and waiver based on alleged conduct of the Union and the Funds.  The Funds

1

moved to strike the affirmative defenses, arguing that § 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1145, bars equitable defenses.  The district court denied the motion to strike, but certified the case for interlocutory appeal under 28 U.S.C. § 1292(b), and we granted the Funds' petition to appeal.  For the reasons stated below, we AFFIRM in part and REVERSE in part the district court's denial of the motion to strike, and we REMAND the case to the district court for further proceedings.

## I.  BACKGROUND

In February 2011, the Funds filed a complaint under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), and ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2) & 1145, to collect delinquent fringe-benefit contributions from G&W.  R. 1.  The Funds alleged that G&W conducts business in Michigan in the building and construction industry.

Count I of the complaint alleged that G&W breached the collective bargaining agreements and trust agreements by failing to make monthly contributions to the Funds on behalf of its employees who were represented by the Union and that G&W refused to submit its records for audit.  Copies of the referenced agreements were not attached to the complaint.  Count II alleged that Nollar, as owner, shareholder, and officer of G&W, breached his fiduciary duties by failing to remit fringe-benefit contributions to the Funds as they were due in the period "from January 2007" and that Nollar refused to submit G&W's records for audit.  Count II sought to hold Nollar personally liable to the Funds, jointly and severally with G&W, for the unpaid contributions.  Count III alleged that Nollar breached his fiduciary duty under the Michigan Building Contract Fund Act, Mich. Comp. Laws § 570.151.  The Funds sought declaratory relief, an audit for the period "from January 2007," payment for all amounts the audit showed due and owing to the Funds under the agreements, prejudgment interest, costs, and attorney's fees.  The defendants filed an answer raising five affirmative defenses.

The Funds then moved for summary judgment on the issue of liability but did not supply the district court with evidence necessary to resolve the issues.  Consequently, the court denied the motion for summary judgment.

Within days the defendants filed an amended answer with leave of court adding affirmative defenses, including the statute of limitations and laches. The defendants also alleged waiver and estoppel:

> [Plaintiffs] are *estopped* from obtaining the relief sought in this case, or have *waived* their right to such relief, based on the actions of the [Union] and Plaintiffs' own actions. The Union at all times [led] Defendants to believe that fringe benefit payments were due only for union members. In past audits Plaintiffs never sought fringe benefits for non-union members and affirmed Defendants' understanding that fringe benefits were not payable for non-members. Defendants relied upon the acts and omissions of the Union and Plaintiffs by bidding and accepting work on the reasonable understanding that Union wages and benefits did not apply to non-members.

R. 21, Page ID 259–60 (emphasis added).

Three weeks later, the Funds filed a motion under Federal Rule of Civil Procedure 12(f)(2) to strike the affirmative defenses of laches, estoppel, and waiver as insufficient defenses on the ground that ERISA § 515 does not permit equitable defenses to a collection action.[1] Even assuming that ERISA § 515 permits equitable defenses, the Funds argued that the defendants could not show reasonable reliance and asserted that a laches defense would not be appropriate where the matter is governed by a six-year contract statute of limitations under Michigan law, Mich. Comp. Laws § 600.5807(8).

The district court denied the motion to strike under Rule 12(f)(2), relying in part on factual information that the parties supplied in connection with the motion for summary judgment, which the court had already denied. The Funds then asked the court to amend the order denying the motion to strike to certify the matter for interlocutory appeal. The Funds appended several exhibits to the motion, including a collective bargaining agreement and a trust agreement. After the defendants failed to respond, the court granted the motion to amend, certified its order for interlocutory appeal, and stayed the case pending resolution of the appeal. We granted the Funds' unopposed petition to appeal. *See* 28 U.S.C. § 1292(b).

---

[1]Although the Funds also interpreted the amended answer as raising an affirmative defense of fraud in the inducement, the defendants clarify on appeal that no such defense was pled.

## II.  STANDARDS OF REVIEW

On interlocutory appeal, we restrict our review to "pure questions of law" and apply a *de novo* standard as we examine the district court's legal conclusions.  *See Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 285 (6th Cir. 2010); *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1023 (6th Cir. 2001).  We ultimately review for an abuse of discretion the district court's decision to deny the motion to strike under Federal Rule of Civil Procedure 12(f).  *See Dassault Systemes, SA v. Childress*, 663 F.3d 832, 846 (6th Cir. 2011).

## III.  ANALYSIS

The resolution of this appeal lies at the intersection of the law applicable to motions to strike under Rule 12(f) and the legal principles governing ERISA collection actions.  We must examine both areas of the law to determine whether the district court appropriately denied the Funds' motion to strike the affirmative defenses of laches, equitable estoppel, and waiver.

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are viewed with disfavor and are not frequently granted.  *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977).  The function of the motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case.  *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986) (quoting *Sidney-Vinstein v. A.H.Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)).  A motion to strike should be granted if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings."  *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (citations and internal quotation marks omitted).  The controversy before us concerns whether the Funds must litigate the affirmative defenses of laches, equitable estoppel, and waiver in this lawsuit seeking to collect delinquent fringe benefit contributions from G&W Construction and Nollar.

"When collective-bargaining agreements create pension or welfare benefits plans, those plans are subject to rules established in ERISA."  *M & G Polymers USA, LLC v. Tackett*, 135

S. Ct. 926, 933 (2015). A "core functional requirement[]" of ERISA is that each "employee benefit plan shall be established and maintained *pursuant to a written instrument.*" *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (quoting 29 U.S.C. § 1102(a)(1)). Written agreements must "specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), and "[t]he plan administrator is obliged to act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with'" ERISA provisions. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (quoting 29 U.S.C. § 1104(a)(1)(D)). Written agreements lend certainty and predictability to employee benefit plans, and this in turn serves the interests of employers and employees. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 402 (6th Cir. 1998) (*en banc*).

The writing requirement is reinforced by Section 302 of the LMRA, 29 U.S.C. § 186. This statute bars an employer from contributing to benefit trusts designated by employee representatives unless the payments are "made in accordance with a written agreement with the employer." *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989) (citing 29 U.S.C. § 186(c)(5)(B)). Written agreements are required to prevent misappropriation or dissipation of monies that are owed to the employees. *Id.*

Collective bargaining agreements that establish ERISA plans are interpreted by use of ordinary contract principles to the extent those principles are not inconsistent with federal labor policy. *M & G Polymers USA, LLC*, 135 S. Ct. at 933. "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) (internal quotation marks omitted)).

A third aspect of federal law critical to this case is § 515 of ERISA, which protects and streamlines the procedure for collecting delinquent contributions owed to ERISA plans by employers by limiting "unrelated" and "extraneous" defenses. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 88 & n.12 (1982) (internal quotation marks omitted). Section 515 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Because the multi-employer plans may rely on the literal terms of written agreements between the employer and the union, *Joint Admin. Comm. of the Plumbing & Pipefitting Indus. in the Detroit Area v. Washington Grp. In'l, Inc.*, 568 F.3d 626, 631 (6th Cir. 2009), any oral understandings or practices between the contracting parties "are immaterial." *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998); *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1154 (7th Cir. 1989) (*en banc*).

The passage of § 515 arose from Congress's concern that "simple collection actions brought by plan trustees [had] been converted into lengthy, costly and complex litigation concerning claims and defenses *unrelated* to the employer's promise and the plans' entitlement to the contributions, and steps [were required] to simplify delinquency collection." *Kaiser Steel Corp.*, 455 U.S. at 87 (internal quotation marks omitted). As the Seventh Circuit explained:

> [Multi-employer] plans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits. . . . Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize. . . . Costs of tracking down reneging employers and litigating also come out of money available to pay benefits. The more complex the litigation, the more the plan must spend. Litigation involving conversations between employers and local union officials— conversations to which plans are not privy—may be especially costly, and hold out especially great prospects of coming away empty-handed.

*Gerber Truck Serv., Inc.*, 870 F.2d at 1151. Thus, governing law restricts the defenses employers may raise to suits brought to collect delinquent contributions to ERISA funds.

Courts generally permit a few defenses, including illegality of the contributions, the contract requiring the contributions was void at its inception, or the union was decertified. *Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A&H Mech. Contractors, Inc.*, 100 F. App'x 396, 402 (6th Cir. 2004). For example, in *Kaiser Steel Corp.*, the Supreme Court held that certain contributions were illegal, barring the collection action. 455 U.S. at 77–78. We allow an employer to raise a defense of fraud in the execution of the contract because success on that defense would render the contract void *ab initio* and preclude the employee benefit fund from collecting. *Elec. Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 656–57 (6th Cir. 2000). However, fraud in the inducement

and similar defects to contract formation make a transaction merely voidable, *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986), and those defenses "cannot cut off the fund's claims." *Behnke, Inc.*, 883 F.2d at 460; *Gerber Truck Serv., Inc.*, 870 F.2d at 1151.

In addition to these three defenses, our court has permitted limited examination of a contract termination defense, at least if the parties' conduct shows, based on a cursory review, that the contract has been terminated. *Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Constr. Grp., Inc.*, 394 F. App'x 285, 290 (6th Cir. 2010) (per curiam); *Plumbers & Pipefitters Local Union No. 572*, 100 F. App'x at 403. This superficial approach "sensibly balances the competing interests in avoiding complex litigation that starves a fund's necessary contributions and ensuring that the employer has a legitimate contractual obligation to make employee contributions." *Plumbers & Pipefitters Local Union No. 572*, 100 F. App'x at 403. Other circuits recognize similar contract termination defenses. *See e.g.*, *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653–54 (2d Cir. 1994); *Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 138 (3d Cir. 1993); *Bakery & Confectionary Union & Industry Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1022 (4th Cir. 1997); *La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 409 n.12 (5th Cir. 1998). *But see Twin City Pipe Trades Serv. Ass'n, Inc. v. Frank O'Laughlin Plumbing & Heating Co.*, 759 F.3d 881, 885 (8th Cir. 2014) (avoiding recognition of a termination defense, but finding that facts would not support such a defense in any event). *Cf. Carpenters Health & Welfare Trust Fund v. Bla-Delco Constr., Inc.*, 8 F.3d 1365, 1369 (9th Cir. 1993) (holding that, because the CBA was not "void," but merely "voidable," the employer's purported termination of the CBA was not a legitimate defense to a trust fund collection action).

These few permissible defenses render irrelevant the oral statements or conduct of the Union in a collection action filed under ERISA § 515. *See Behnke, Inc.*, 883 F.2d at 463. The Funds are entitled to rely on the written terms of an existing ERISA plan document or collective bargaining agreement. *Gerber Truck Serv.*, 870 F.2d at 1153. Put another way, "multi-employer trust funds are entitled to rely on an employer's promises to make contributions to the funds, irrespective of any breach or omission by the union." *Laborers' Pension Trust Fund-Detroit &*

*Vicinity v. Rocwall Co.*, 357 F. App'x 638, 640 (6th Cir. 2009).  This is because the "funds often are not in a position to know what is going on between the employer and the union, and the union may have interests that differ from or are inimical to the funds' interests."  *Id.  See also Trustees of Detroit Carpenters Health & Welfare Fund v. River City Constr. Co.*, 99 F. App'x 612, 615 (6th Cir. 2004) (recognizing that the employer could not raise the union's alleged breach of a CBA as a defense to the Funds' suit for delinquent contributions).

Precedent is well-established "that ERISA funds are accorded a special status and are entitled to enforce" the written contracts, without regard to the understandings or common-law contract defenses of the original parties, similar to a holder in due course in commercial law.  *See Walcher & Fox, Inc.*, 270 F.3d at 1025; *New Bakery Co. of Ohio*, 133 F.3d at 959.  Once the "employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question" the Funds' ability to enforce the agreement.  *Trustees for Mich. BAC Health Care Fund v. OCP Contractors, Inc.*, 136 F. App'x 849, 851 (6th Cir. 2005) (quoting *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990)).  Any conduct of the Union that is contrary to the written provisions of the agreements cannot affect the Funds' right to collect contributions that are due and owing to the Funds.  *See Behnke, Inc.*, 883 F.2d at 462–63; *Gerber Truck Serv., Inc.*, 870 F.2d at 1151.

In this case, G&W Construction and Nollar did not raise affirmative defenses of fraud in the execution of the contract, illegality of contributions, decertification of the union, or termination of the contract.  Instead, they seek to assert equitable defenses of laches, estoppel, and waiver, arguing that the conduct of the Union and the Funds bars this collection action.  We turn first to the defendants' laches defense.

**A. Laches**

"Laches consists of two elements:  (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party."  *Brown-Graves Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000); *PACE Indus. Union-Mgmt. Pension Fund v. Dannex Mfg. Co.*, 394 F. App'x 188, 195–96 (6th Cir. 2010).  In both *Brown-Graves Co.* and *PACE Indus. Union-Mgmt. Pension Fund*, we addressed the merits of the laches defenses

raised in those cases without deciding whether ERISA § 515 bars a laches defense in a collection action.

In this circuit, we recognize a strong presumption against asserting a laches defense to shorten a statute of limitations. *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 233 (6th Cir. 2007) (citing *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985)); *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 321 (6th Cir. 2001). We have cautioned that "only rarely" might a laches defense bar relief before the applicable statute of limitations has run. *Chirco*, 474 F.3d at 233; *Tandy Corp.*, 769 F.2d at 366.

Recently, the Supreme Court held that, where Congress has established a statute of limitations (such as the three-year limitations period in the Copyright Act), laches may not be invoked to bar damages relief if the action was brought within the limitations period. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1972–74 (2014). Laches, the Court explained, "is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation." *Id.* at 1973 (quoting 1 D. Dobbs, Law of Remedies § 2.4(4), p. 104 (2d ed. 1993) ("laches . . . may have originated in equity because no statute of limitations applied, . . . suggest[ing] that laches should be limited to cases in which no statute of limitations applies")). Both before and after the merger of law and equity, the Supreme Court "has cautioned against invoking laches to bar legal relief." *Id.* (citing, among other cases, *United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law")).

Because ERISA does not provide a statute of limitations for ERISA collection actions, we, like other circuits, apply the limitations period for the state cause of action that is most analogous to the ERISA claim at issue. *Cent. States Se. & Sw. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1107 (6th Cir. 1986) (*en banc*); *Trs. of Wyo. Laborers Health & Welfare Plan v. Morgen & Oswood Constr. Co., Inc. of Wyo.*, 850 F.2d 613, 620–21 (10th Cir. 1988) (listing cases). We apply the forum state's general limitations period for contract actions, *Kraftco, Inc.*, 799 F.2d at 1107, and here, the parties agree that Michigan's six-year statute of limitations for contract actions applies to the Funds' collection suit. *See Mich. United Food & Commercial Workers Unions & Drug & Mercantile Emps. Joint Health & Welfare Fund v. Muir*

*Co.*, 992 F.2d 594, 597 (6th Cir. 1993) (applying Mich. Comp. Laws Ann. § 600.5807(8) in an ERISA collection action).

The Funds filed this action in February 2011 seeking unpaid contributions for the period "from January 2007." Because the suit was brought within the six-year statute of limitations for contract actions in Michigan, the defendants may not shorten the limitations period by asserting a laches defense against the Funds. *See Petrella*, 134 S. Ct. at 1972–74; *Herman Miller, Inc.*, 270 F.3d at 321.

The defendants rely on *Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877 (7th Cir. 2002), to argue that their laches defense is viable. In that case, the Seventh Circuit relied upon its longstanding rule that "just as various tolling doctrines can be used to lengthen the period for suit specified in a statute of limitations, so laches can be used to contract it." *Id.* at 881. While acknowledging its precedent, the opinion recognized that "some courts have invoked a presumption against the use of laches to shorten the statute of limitations," citing, among other cases, our decision in *Herman Miller, Inc. Id.*

We subsequently had occasion to address our own presumption in the context of fashioning a remedy in a copyright suit demanding monetary damages, a prospective injunction, and equitable relief—an order mandating destruction of a housing project that allegedly infringed the plaintiffs' copyright. *Chirco*, 474 F.3d at 235. Noting that we had not "ruled out" applying laches in the face of "an explicit limitations period," we recounted our application of laches in the most "compelling" copyright infringement cases. *Id.* at 233. *Chirco* then invoked laches to refuse to order the destruction of 109 owner-occupied housing units because "the plaintiffs' inordinately lengthy delay" in bringing suit resulted in undue prejudice to the defendants. *Id.* at 236. With regard to monetary damages and prospective injunctive relief permitted by the Copyright Act, however, we enforced the limitations period. *Id.* at 235.

In *Petrella*, the Supreme Court discussed *Chirco* as an illustration of the extraordinary circumstances that might warrant, "at the very outset of the litigation," applying laches to curtail a form of relief that would work unjust hardship on the defendants and innocent third parties, even though the limitations period had not yet run. *Petrella*, 134 S. Ct. at 1977–78. But like our

court in *Chirco*, the Supreme Court refused to allow a laches defense to bar a suit for damages that was timely filed within the statute of limitations. *Id.* at 1967, 1978.

Although *Petrella* and *Chirco* addressed the Copyright Act, in which Congress expressly provided a statute of limitations, one of our sister circuits has described the legal reasoning of *Petrella* as "categorical" and applied it in a case brought under the Coal Industry Retiree Health Benefit Act by the trustees of multiemployer benefit plans to recover unpaid health insurance premiums, interest and liquidated damages. *Holland v. Bibeau Constr. Co.*, 774 F.3d 8, 10, 15–16 (D.C. Cir. 2014). That court similarly held that laches did not bar the trustees' monetary claims brought within the statute of limitations.

The reasoning of *Petrella*, *Chirco*, and *Holland* support our holding that laches cannot bar an action to collect unpaid monetary contributions owed to the Funds when the suit is brought under ERISA § 515 within the applicable statute of limitations. Because laches "within the term of the statute of limitations is no defense at law" to claims for monetary damages, *see Mack*, 295 U.S. at 489, the laches defense raised by G&W Construction and Nollar is insufficient as a matter of law under Rule 12(f). *See EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980); 5C Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice and Procedure § 1381 (3d ed. 2008). For these reasons, the motion to strike this affirmative defense should have been granted.

## B. Equitable estoppel

We turn next to the equitable estoppel defense. The defendants specifically alleged in the amended answer that the Union led them "to believe that fringe benefit payments were due only for union members," and that, during past audits the Funds did not seek "fringe benefits for non-union members" and affirmed the defendants' "understanding that fringe benefits were not payable for non-members." R. 21, Page ID 259. The defendants also alleged that they relied on the acts and omissions of the Union and the Funds in bidding construction work.

To the extent the defendants assert equitable estoppel against the Funds based on the Union's conduct, the defense is barred by ERISA § 515. Equitable estoppel based on union conduct is not among the few defenses that may be raised to a collection action. *See Behnke,*

*Inc.*, 883 F.2d at 460–61; *Plumbers & Pipefitters Local Union No. 572*, 100 F. App'x at 402. Because the defendants may not point to the Union's conduct as a basis for equitable estoppel against the Funds, this aspect of the affirmative defense is insufficient as a matter of law, and the district court should have granted the motion to strike. *See Dassault Systemes, SA*, 663 F.3d at 846.

We now turn to the equitable estoppel defense asserted against the Funds based on their own conduct. We previously declined to decide whether equitable estoppel against the fund is generally available as a defense to collection actions, *Trustees of Michigan Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir. 2000); *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 319 (6th Cir. 1984), and we find no reason to decide that question here. We note, however, our agreement with the observation in *Gibbons* that, "[as] a matter of policy . . . equitable estoppel of third party enforcement of collective bargaining agreements governed by ERISA may well conflict with Congress's objectives in enacting ERISA, *i.e.*, that establishment of employee benefits funds by such plans be in writing and that the funds' fiscal health remain secure." *Id.* at 595. We rejected the equitable estoppel defenses against funds in *Gibbons* and *Kohn Beverage Co.* because the employers failed to meet the common law elements of the defense. *Gibbons*, 209 F.3d at 591–94; *Kohn Beverage Co.*, 749 F.2d at 319–20.

Equitable estoppel "requires a representation, to a party without knowledge of the facts and without the means to ascertain them, upon which the party asserting the estoppel justifiably relies in good faith to his detriment." *Kohn Beverage Co.*, 749 F.2d at 319. All of these elements must be present before a court may order estoppel. *Gibbons*, 209 F.3d at 591.

The defendants here did not allege that they were without knowledge of the facts and without the means to ascertain them. *See Kohn Beverage Co.*, 749 F.2d at 319. Nor could they so allege because they could consult "the agreements themselves . . . to acquire knowledge by reasonable diligence" concerning their obligation to pay contributions for non-union members. *Gibbons*, 209 F.3d at 593. An employer's failure to review the collective bargaining agreements and related plan documents defeats any claim of ignorance, and the defendants' reliance on the Funds' words and actions during previous audits, "in the face of the explicit terms of the

agreements establishing" their duty to contribute to the Funds, "cannot be described as justifiable." *Id.*; *Sprague*, 133 F.3d at 404 ("[R]eliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.")

Under the facts alleged, equitable estoppel would not constitute a valid defense to the Funds' collection action, whether based on conduct of the Union or the Funds. We therefore conclude that the district court should have granted the Funds' motion to strike the equitable estoppel defense.

## C. Waiver

Finally, we briefly consider the defendants' waiver defense. "Waiver and estoppel are distinct, although related, concepts," *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993), but the Funds, which are challenging the district court's decision to deny the motion to strike, have not offered any "developed argumentation" on the waiver defense. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Because "it is not our function to craft an appellant's arguments," *United States v. Phibbs*, 999 F.2d 1053, 1080 n.12 (6th Cir. 1993), we decline to address whether it is appropriate to bar the affirmative defense of waiver in this ERISA § 515 collection action.

## IV. CONCLUSION

The district court should have granted the Funds' motion to strike the defenses of laches and equitable estoppel, and we decline to consider the district court's ruling on the waiver defense. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND the case to the district court for further proceedings consistent with this opinion.