**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0420n.06
Filed: July 15, 2008

**No. 07-4212**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MAGNUM TOWING & RECOVERY et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF TOLEDO et al., | ) | NORTHERN DISTRICT OF OHO |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SUTTON and COOK, Circuit Judges; and ROSE, District Judge.[*]

PER CURIAM. In 2003, the City of Toledo, Ohio, suspended Magnum Towing and Recovery from the list of towers eligible to perform police-ordered tows of inoperable and abandoned cars within the City, and, in 2004, the City revoked Magnum Towing's towing permit. Shortly thereafter, Magnum Towing and its owner, Anna Petrey, filed this § 1983 action against the City and two of its police officers, alleging violations of federal due process and Ohio law. We affirm the district court's decision granting summary judgment to the City and its officers.

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

I.

The parties have a turbulent history with each other. Petrey first sued the City in 1998 after it withdrew the initial approval of Petrey's application for a Class A safety permit, which had allowed Magnum Towing to perform private, third-party and police-ordered tows within the City's limits. Concluding that federal law preempted the local towing regulations, the district court granted Petrey relief. *Petrey v. City of Toledo*, No. 3: 98CV7188, 1999 U.S. Dist. LEXIS 21199, at *14 (N.D. Ohio Oct. 10, 1999). We affirmed in part and reversed in part, *Petrey v. City of Toledo*, 246 F.3d 548, 565 (6th Cir. 2001), after which the parties entered into a settlement agreement. Petrey released her claims against the City for $10,000, and the City granted Petrey a special use permit, allowing Magnum Towing to continue its towing operation from a new location on South Avenue in Toledo, which was then under construction.

The settlement agreement, however, did not settle everything. On July 14, 2003, the City once again removed Magnum Towing from the towing list because the new building failed to conform with the municipal code. The notice of suspension indicated that Magnum Towing would be returned to the towing list once it came into compliance with the code.

Magnum Towing administratively appealed the suspension, maintaining that it had complied with the Police Department's instructions in preparing the South Avenue facility and asking the City to allow it to remain on the towing list pending the appeal. The City responded that the suspension was non-appealable. After Magnum Towing filed a motion for a temporary restraining order in

which it requested that the City reinstate it to the towing list pending its appeal, the City returned Magnum Towing to the list.

On June 4, 2004, the City again revoked Magnum Towing's permit, this time because the company failed to make a timely licensing payment to the City (of $2,410) by May 29, 2004. *See* Toledo, Ohio, Municipal Code § 765.12(h). Magnum Towing appealed the City's decision that day, claiming that it mailed the payment on May 27, 2004, and requesting that the City return its name to the towing list pending appeal. On June 7, 2004, Magnum Towing again requested that the City place its name back on the towing list, after which the City agreed to put the company back on the replacement list if it submitted a replacement check. On June 11, Magnum delivered a replacement check to the City, renewed its appeal and repeated its request to be returned to the towing list pending the appeal.

On July 9, the Towing Board of Review concluded that the Police Department properly revoked Magnum Towing's Class A permit due to the late payment. In view of the company's submission of the replacement check, however, the Board directed the City to reinstate the permit and the Police Department to return the company to the towing list.

On October 22, 2004, Magnum Towing filed this lawsuit, and, on September 15, 2005, it filed its First Amended Complaint, which raised various federal and state law claims. Through two different orders, one on May 9, 2006, the other on August 29, 2007, the district court rejected all of the company's claims as a matter of law.

II.

We give fresh review to a district court's summary-judgment decision, *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008), drawing all reasonable inferences in favor of the nonmoving party (Magnum Towing) and sustaining a grant of summary judgment if no genuine issue of material fact remains, *see Alpert v. United States*, 481 F.3d 404, 407 (6th Cir. 2007).

A.

Magnum Towing first contends that the district court erred in *sua sponte* granting the City's motion for summary judgment on its federal due process claims and that it was somehow blind-sided by the court's decision. That is not the case. The City moved for summary judgment on *all* of the company's claims that had survived the district court's initial motion-to-dismiss ruling. By doing so, it put Magnum Towing on notice that, if it did not come forward with evidence of material fact disputes, the federal rules empowered the district court to reject all of its claims. And that is exactly what the court did.

Magnum Towing further argues that the district court erred in its application of the municipal standard of liability under § 1983—not, mind you, because it applied the wrong standard but because it applied a standard (the right standard) that neither party referenced in its brief. A district court, not surprisingly, does not commit reversible error when it fulfills its "obligation to apply the correct legal standard regardless of whether the parties correctly articulated it." *Wilson v. Ohio*, 178 F. App'x 457, 467 (6th Cir. Apr. 25, 2006). Nor, contrary to the company's additional suggestion, is

a court, in issuing a summary judgment (or any other) decision, permitted to rely only on precedent explicitly cited in the parties' briefs. Otherwise, as this deeply acrimonious but shallowly briefed dispute illustrates, the law would be a mess.

## B.

Magnum Towing next argues that the district court erred in rejecting the individual-capacity, due process claims against the officers. The company's train of reasoning seems to go something like this: The Toledo Municipal Code gave the company a right to a towing license and to be on the towing list; the City violated its due process rights by suspending it from the towing list in 2003 and by revoking its Class A permit in 2004; the officers violated due process by telling the company that the license revocation was non-appealable and by refusing to stay enforcement pending appeal; and the district court failed explicitly to address the liability of the individual officers in its order.

There are two problems with Magnum's argument. First, while different standards govern the liability of a municipal defendant and an individual officer under § 1983, that does not mean the same flaw cannot defeat both claims. That is what happened here.

In rejecting this claim, the district court correctly reasoned that the company had failed to allege and prove the inadequacy of state remedies. As we have explained, a § 1983 plaintiff "may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of [an] established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a random and unauthorized act *and* that

available state remedies would not adequately compensate for the loss." *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (internal quotation marks omitted); *see also Mitchell v. Fankhauser*, 375 F.3d 477, 481–84 (6th Cir. 2004) (stating that a plaintiff must plead the inadequacy of state remedies when an alleged due process violation involves a random or unauthorized act); *Rothhaupt v. Maiden*, 144 F. App'x 465, 472 (6th Cir. July 20, 2005) (affirming the dismissal of the plaintiff's due process claims where the plaintiff failed to explain why a state tort remedy for conversion would not suffice to address his claim).

Magnum Towing relied on the second theory—namely, the one requiring it to show there was no state remedy for its loss—and never argued that its injuries stemmed from an "established state procedure." A constant theme in this ten-year saga has been that vindictive officials were out to "get" the company, JA 269, and that it was "singled out" for mistreatment, JA 272; *see also* JA 269 (Defendants had a "malicious intent to harm Magnum[] and effectively put Magnum out of business."); *id.* ("Captain Henessey, *of his own accord*, through S[eargent] Ryder, removed Magnum from the tow list on July 14, 2003.") (emphasis added). But for the unauthorized acts of these officials, the company argued, the City's established procedures would give it relief. *See* Br. at 11 ("Magnum appealed the suspension the same day, expecting to be re-instated to the tow list pending [its] appeal to the Tow Review Board, *as is consistent with [Toledo Municipal Code] § 765.26(c)*.") (emphasis added).

Even assuming that Magnum Towing possessed a property interest in its tow license and in its presence on the towing list, its procedural due process claims come up short because it "cannot

claim a denial of due process without explaining why the existing process is inadequate." *Rothhaupt*, 144 F. App'x at 472. Consider one procedural option that the company never explored: It could have appealed its removal from the towing list to the state court of common pleas under Ohio Revised Code § 2506.01. Except as otherwise provided, that section says that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located." Ohio Rev. Code § 2506.01(A). The company offers no explanation why this remedy, among others, could not have solved its problem with the supposedly unauthorized acts of the City's officers.

A plaintiff, it is true, is not required to exhaust state remedies before pursuing a § 1983 procedural due process claim. *See Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 741 (6th Cir. May 11, 2005). But it still must prove as an element of the claim that state procedural remedies are inadequate. "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury," *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004), which is why "the plaintiff must attack the state's corrective procedure as well as the substantive wrong," *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (internal quotation marks omitted). In short, this flaw in the company's theory of liability doomed its due process claim against *both* the City and its officers.

Second, while it may be true that the district court did not explicitly address the individual-capacity claims against the officers after identifying this flaw in the company's complaint against

the City, no harm resulted. The fact remains that the company must establish a triable issue of fact on this point—whether against the City or its officers—and it has not. The claim was properly rejected as a matter of law.

C.

Magnum Towing next contends that the district court erred in granting summary judgment on its state law claims. We disagree.

1.

The company filed a malicious-criminal-prosecution claim against the City premised on the criminal charges it allegedly filed against Magnum, Petrey and her sons, Kevin and Keith Trombley. To prove a malicious-criminal-prosecution claim under Ohio law, a plaintiff must demonstrate (1) that the government officials instituted or continued criminal proceedings with malice; (2) that they lacked probable cause; and (3) that the criminal prosecution terminated in favor of the accused. *See Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990); *see also Harris v. United States*, 422 F.3d 322, 327 (6th Cir. 2005).

The problem with this claim, as the district court recognized, is that the company pointed to to no admissible evidence establishing the first element of it—namely, that the City, as opposed to some other entity, instituted criminal proceedings against the company. It remains undisputed that the State of Ohio, not the City, brought charges against Petrey for filing an improper tax return and

operating without a required vendor's license. And while bench warrants were issued for the arrests of Kevin and Keith Trombley for their failure to appear in court in two separate, unrelated cases, Petrey admitted in her deposition that she did not know who brought the original charges against her sons.

The company further contends that the district court failed to consider various documents it submitted in support of its claims. First, the district court properly did not consider any documents—including the purported City Building Documents and the Ohio sales tax documents—that were unauthenticated or otherwise failed to meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997); *Wysong v. City of Heath*, 260 F. App'x 848, 857 (6th Cir. Jan. 22, 2008); *cf. Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Second, the company's argument that Petrey's affidavit "clearly show[s] that the prosecution of Anna Petrey, while technically brought in the name of the State of Ohio, was clearly instigated and maintained by Defendants-Appellees," Br. at 25, lacks merit. Petrey's affidavit contradicts her earlier deposition testimony, and "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts [her] earlier deposition testimony," *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2004) (same). The district court properly granted summary judgment on this claim.

2.

To establish a claim for abuse of process under Ohio law, a plaintiff must demonstrate that (1) a legal proceeding has been set in motion in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *See Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994). The company's own arguments defeat this claim. It contends that the City *improperly* removed it from the towing list on July 14, 2003, as a way to "get Magnum," JA 269, then argues that "[t]he police suspended Magnum first, then tried to find a reason for the suspension after the fact," *id.* According to Magnum, then, the City did not remove it "properly," as required to establish this claim, but improperly. *See* JA 379 ("The documents . . . show that Defendants, *without cause*, removed Magnum Towing from the Police Tow list on July 14, 2003, and then after the fact tried to utilize the City Building Inspection Department to justify Defendants['] removal of Plaintiffs from the tow list.") (emphasis added); JA 270 ("Defendants[] took Magnum off the tow list first, tried to find the 'violations' second, then had to put [it] back on the list when they couldn't find anything."). Even assuming the company had alleged that the City properly removed it from the towing list, Magnum offers nothing but conjecture to suggest that the City used a legal proceeding as a "club," *see Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 14 (Ohio 1996) ("[T]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club.")

- 10 -

(internal quotation marks omitted), to achieve its allegedly ulterior purpose of "put[ting] Magnum out of business," Br. at 26. This claim, too, was properly dismissed as a matter of law.

3.

Magnum also contends that the City breached a provision of the August 2002 settlement agreement which provides in relevant part that "[i]t is further understood and agreed that no retaliatory actions shall be taken against Magnum Towing by the City or its Police Department with regard to its Class A status as a result of the institution of the lawsuit at issue here or its resolution." JA 25. To establish a claim for breach of contract under Ohio law, a plaintiff must establish (1) that a binding contract existed; (2) that the plaintiff fulfilled his obligations; (3) that the defendant unlawfully failed to fulfill its contractual obligations; and (4) that the plaintiff suffered damages as a result of the breach. *See Lawrence v. Lorain County Cmty. Coll.*, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998).

In its memorandum in opposition to the City's motion for summary judgment, and indeed even in this appeal, Magnum fails to point to any specific record evidence supporting its claim of a retaliatory breach of the settlement agreement. It is not the district court's (or our) duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments before the court. *See Wardle v. Lexington-Fayette Urban County Gov't*, 45 F. App'x 505, 509 (6th Cir. Sept. 5, 2002) (per curiam) ("[A] district court is not required to search the record to determine whether genuine issues of material fact exist when the non-moving

party has failed to point them out."); *Bickley v. Norfolk & W. Ry.*, No. 98-3286, 1999 U.S. App. LEXIS 13654, at *11 (6th Cir. June 15, 1999) ("To survive a motion for summary judgment, it is incumbent upon the nonmovant to point to specific evidence sufficient to show that a reasonable jury could find for the nonmovant."). Conclusory assertions will not by themselves do the trick—and that is all Magnum Towing has done with respect to this claim.

D.

The company lastly takes issue with the district court's order of May 9, 2006, which granted the City's motion for dismissal of Magnum's claim that Ohio law preempts the City's regulations governing police-ordered towing. The City as an initial matter contends that, because Magnum Towing's notice of appeal referenced only the district court's August 29, 2007, decision, not the order on the City's motion to dismiss, we lack jurisdiction over this claim. We disagree.

Although Magnum's notice of appeal explicitly references just the district court's August 29 order, it is well-settled that "an appeal of a final judgment draws into question all prior non-final rulings and orders." *Caudill v. Hollan*, 431 F.3d 900, 904 (6th Cir. 2005) (internal quotation marks omitted); *see also Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007). We thus have jurisdiction over this portion of the appeal.

Having reviewed the merits of this portion of the appeal, however, we find it wanting. For the reasons adequately given by the district court, this claim was properly dismissed as a matter of law.

III.

For these reasons, we affirm.