**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 17a0525n.06**

No. 17-1009

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DENNIS F. BRENAY, SR.; LINDA BRENAY, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL SCHARTOW; TROY SIERRAS, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Defendants-Appellees, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| and | ) | |
| | ) | |
| KYLE GLOCKSINE; CITY OF ESSEXVILLE; | ) | |
| BAY CITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

> **FILED**
> Sep 12, 2017
> DEBORAH S. HUNT, Clerk

Before: CLAY, GRIFFIN, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Parents often tell their children social media can cause problems. This case is proof of that. A few texts and a Facebook post may not seem like much. But when sent to an ex-girlfriend, who has a personal protective order out against you, both are ill-advised. Dennis Brenay, Jr. learned this lesson the hard way—when he contacted his ex-girlfriend, she called the Bay City Police.

Officer Troy Sierras and Sergeant Michael Schartow responded to the call and ultimately ended up on the Brenays' porch. When they rang the bell, Dennis Brenay, Sr. answered, agreed to get his son, and returned a minute later with his wife and Brenay, Jr. in tow. Brenay, Sr. opened the glass storm door, but remained inside. Brenay, Jr. stood behind his father, six inches

from the door, a foot from the outside, and a "few feet" from Officer Sierras. R. 40-3, Pg. ID 594. Linda Brenay stood behind her son—the family of three huddled in a cramped foyer. The officers asked Brenay, Jr. to come onto the porch several times, but he declined; the porch was wet and he had no shoes.

So the officers began to question Brenay, Jr. through the doorway. Brenay, Sr. and Linda Brenay each attempted to interject over the next several minutes. Brenay, Sr. even asked if he could pose a question to the officers. But, he says, Officer Sierras rebuffed him: "No, I'm talking to your son." R. 42-5, Pg. ID 701. What happened next depends on who you ask.

To the Brenays, Officer Sierras appeared to be "pump[ing] himself up" for a confrontation—calling Brenay, Jr. a "f---ing coward . . . [h]iding behind [his] f---ing mom and dad." R. 40-4, Pg. ID 607; R. 42-5, Pg. ID 702. Frustrated by Officer Sierras' attitude, Brenay, Sr. declared "that's enough" and told his son to call his lawyer. R. 40-2, Pg. ID 581. He also raised his arms in exasperation and let go of the storm door. As the door swung shut and Brenay, Jr. retreated back into the house, chaos ensued. Both Brenay, Sr. and Sergeant Schartow reached for the door handle to keep the door ajar. In the process, Sergeant Schartow "ripped" the door from Brenay, Sr.'s hands. R. 42-5, Pg. ID 701. Officer Sierras then "lunged" through the doorway and grabbed Brenay, Jr. by the wrist. R. 42-6, Pg. ID 751. In the process, he "body slam[med]" Brenay, Sr. into the wall. R. 42-5, Pg. ID 701. Brenay, Sr. began to fall, and—in an attempt to catch himself—reached out and "grabbed somebody's arm." *Id.* at Pg. ID 702. Officer Sierras continued into the hallway, where he and Brenay, Jr. began to struggle. Sergeant Schartow soon joined them, "jump[ing] over" Brenay, Sr. and striking him in the stomach and groin. *Id.* at Pg. ID 703. As the parties wrestled, Brenay, Jr. felt someone deploy a taser into his arm. Eventually, the officers pinned Brenay, Jr. down and handcuffed him. Linda Brenay asked

Sergeant Schartow "what right he had coming into [their] house [] without a warrant or anything." R. 42-6, Pg. ID 756. Sergeant Schartow responded: He could come into their house "any time he want[ed]." *Id.*

The officers tell a very different story. According to them, the Brenays tried to obstruct their son's arrest. Yes, Officer Sierras reached through the doorway and grabbed Brenay, Jr., but only because Brenay, Sr. moved to close the door when the officers told Brenay, Jr. that he was under arrest. Officer Sierras says that once he crossed the threshold, the Brenays tried to pull their son deeper into the hallway. Brenay, Sr. even tried to "get in between" them during the scuffle—he tried to "push his son back into the house," and when that failed, "to push Officer Sierras away." R. 42-4, Pg. ID 680. Sergeant Schartow, meanwhile, says Brenay, Jr. pulled him into the residence when he intervened in the scuffle.

Either way, the officers eventually handcuffed Brenay, Jr. and led him away. But they were not done with Brenay, Sr. Officer Sierras authored a police report for his department, and Sergeant Schartow signed off on another report. Both accused Brenay, Jr. of resisting arrest and Brenay, Sr. of interfering with his son's arrest. The Bay City Prosecutor's Office charged father and son with a felony for obstructing a police officer. Both later prevailed at trial—Brenay, Sr. before the jury; Brenay, Jr. at directed verdict.

After the trial, Brenay, Sr. and Linda Brenay sued Officer Sierras and Sergeant Schartow under 42 U.S.C. § 1983. They accused the officers of unlawfully entering their house, using excessive force, and maliciously prosecuting Brenay, Sr.—all in violation of the Fourth Amendment. Officer Sierras and Sergeant Schartow each mounted qualified-immunity defenses at summary judgment and prevailed. Now on appeal, the Brenays drop their excessive-force claim but press the remaining two.

I.

Whether Officer Sierras and Sergeant Schartow are entitled to qualified immunity turns on two questions: Did they violate Brenay, Sr.'s and Linda Brenay's constitutional rights? And if so, were those rights clearly established at the time? *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the answer to either question happens to be "no," then the officers are not liable.

Still the Brenays have a few advantages at this stage. No jury has yet decided which story to believe. So in answering these questions, we must view the facts in the light most favorable to the Brenays and draw all reasonable inferences in their favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). And unlike the officers, the Brenays do not have to prove they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All the Brenays have to show is that a reasonable jury, accepting their version of the story as true, *could* conclude that the officers violated their clearly established rights. *Scott*, 550 U.S. at 380.

A.

The government is not your nosy neighbor—the one who always pokes her head in, uninvited, to critique your garden or gossip about the couple down the street. Sure, the police, like any Girl Scout, may approach your door, knock, and ask you a question or two. *See United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). But the Fourth Amendment draws a "firm line" at the door. *Payton v. New York*, 445 U.S. 573, 590 (1980); *see also United States v. U.S. Dist. Court*, 407 U.S. 297, 313 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed[.]"). If the government wants inside, they need a warrant, consent, or an exigent circumstance to justify their entry. *Cummings v. City of Akron*, 418 F.3d 676, 685 (6th Cir. 2005).

Sergeant Schartow has an easy out: The Brenays seem to have forgotten all about him. The Brenays contend that Officer Sierras had no business entering their home without a warrant. But the Brenays do not mention Sergeant Schartow. Their silence forfeits any unlawful-entry claim against him. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013).

Officer Sierras, on the other hand, does not get off so easy. He could have obtained a warrant, but chose not to do so. An invitation to come inside would suffice, but Brenay, Sr.'s declaring "that's enough" and letting the door swing shut did not exactly shout, "Come on in!" *See Cummings*, 418 F.3d at 685 (explaining that a homeowner's attempt to close his partially open front door was a sign that he "wished to end his conversation with the officers"). So he must prove that his conduct fell within one of the other "few," "carefully delineated" exigency exceptions to the warrant requirement. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984). That is a rather "heavy burden," made heavier still by our reluctance to sanction warrantless intrusions into a home for misdemeanor arrests like this. *Id.* at 749, 753; Mich. Comp. Laws Ann. § 600.2950(23) (defining failure to comply with a personal protective order as a misdemeanor). Only a handful of exigencies can justify a warrantless entry into a home, and most do not apply to this case. *See Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). There was no reason to believe Brenay, Jr. meant to escape or to harm another when he went to call his lawyer. Nor was Brenay, Jr. likely to destroy evidence while the police waited on a warrant; the officers had seen his messages, copies of which his ex-girlfriend possessed.

That leaves only the "hot pursuit" doctrine. If an officer initiates an arrest in a public place, but the suspect flees into a private one, the officer may give chase without stopping for a warrant. *See Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013). In other words, a suspect

may not defeat an arrest by simply running inside. *United States v. Santana*, 427 U.S. 38, 43 (1976).

Whether the hot pursuit doctrine applies to this case depends on whether Brenay, Jr. was standing in a public place when Officer Sierras told him that he was under arrest. We know that Brenay, Jr. was standing in the foyer, six inches from the open doorway, for most of his interaction with the officers. The Supreme Court has said that a person who stands in his front doorway stands in a public place because he is "as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his] house." *Id.* at 42. But this circuit has not addressed whether a person who opens his door *voluntarily* to talk to police loses his reasonable expectation of privacy within the meaning of *Santana*. Our sister circuits are split on the issue. *See* Wayne LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 6.1(e) (5th ed. 2016). And how the analysis might change when the person is standing six inches back from the doorway is even less settled. If this appeal came down to these questions, it would be easy. Government officials are entitled to qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). With so many answers outstanding, how *Santana* would apply to this case is hardly "beyond debate." That the officers violated the Brenays' constitutional rights when they entered the Brenays' home would not be clearly established.

Unfortunately for Officer Sierras, the hot pursuit doctrine may not apply because Brenay, Jr. may have ended his interaction with the police *before* Officer Sierras told him he was under arrest. Linda Brenay testified that Officer Sierras never even told Brenay, Jr. that he was under arrest. And the police report Officer Sierras submitted stated that he yelled, "He's under arrest!" and ordered Brenay, Jr. outside only after his father attempted to shut the door. R. 42-4, Pg. ID

678. Officer Sierras later testified even more clearly. When asked whether he had announced that Brenay, Jr. was under arrest before the door started to close, Officer Sierras said: "As soon as he started to shut the door, I said, no, he's coming with me, he's under arrest, and I tried to block the door from being shut." R. 40-3, Pg. ID 601. Officer Sierras' testimony also indicates that Brenay, Jr. had "started to turn to leave to retreat back into the house" before he told him he was under arrest. *Id.* at Pg. ID 602; *see also* R. 40-2, Pg. ID 581 ("Dad says, that's enough, goes to shut the door. I block the door with my left hand. Dennis, Jr., is now going to go back into the house. I said, no, he's coming with us. I grab Dennis'[s] arm, *then I tell him he's under arrest*." (emphasis added)).

If these facts are true, the officers' attempt to follow Brenay, Jr. inside would not have been a "pursuit" within the meaning of *Stoneburner*. 716 F.3d at 931. The reason is straightforward. Unless and until Officer Sierras initiated an arrest, the Brenays were free to shut the door and walk away. *Montejo v. Louisiana*, 556 U.S. 779, 795 (2009); *see also Silverman v. United States*, 365 U.S. 505, 511 (1961). And they tried to do just that: Brenay, Sr. said "that's enough," he let go of the door, which began to swing shut, and Brenay, Jr. began to walk off to call his lawyer. To call any of these choices "flight"—in the absence of proof that Officer Sierras had already made his intentions known—"would make a fugitive out of any citizen who exercises his right to end a voluntary conversation with a police officer." *Stoneburner*, 716 F.3d at 931 (also providing that "[i]n consensual encounters, we think of individuals as 'free to leave,' not 'free to flee'"). So if Officer Sierras initiated Brenay, Jr.'s arrest and reached through the door only after the Brenays tried to retreat back inside, then there is no question that he violated their clearly established rights. *Id.* at 931–33 (holding that an officer violated a suspect's clearly established rights by grabbing him through a door after he had returned inside, because the

officer had not told the suspect he was under arrest while they talked outside); *Cummings*, 418

F.3d at 685–87 (similar).

We cannot say for certain what happened at the Brenays' front door. But we also do not

need to. At summary judgment, we do not decide which version of the facts is accurate. All that

matters is that, accepting the account most favorable to the Brenays, a reasonable jury could

conclude that Officer Sierras violated the Brenays' clearly established rights by entering their

home without any warrant, consent, or exigency. Whether he actually did so "is the epitome of a

triable issue of fact, one over which our authority recedes and the jury's takes over."

*Stoneburner*, 716 F.3d at 930 (citation omitted). We therefore reverse the district court's

decision granting summary judgment in favor of Officer Sierras on the Brenays' unlawful-entry

claim. *See Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991) ("[S]ummary judgment is

inappropriate on this issue because there are factual disputes on which the issue of immunity

turns such that it cannot be determined before trial whether the officers did acts which violate

clearly established rights.").

## B.

Warrantless entry is the feature film in the Brenays' brief. That makes malicious

prosecution the credits that roll by quickly at the end. In these credits, the Brenays tell us that

when the district court granted the officers' motion for summary judgment, it improperly decided

that any misrepresentations in the officers' reports were not intentionally or recklessly made.

They tell us that this question should have been left to the jury. But they do not tell us *why*.

Their malicious-prosecution claim is thus forfeited.[1]

---

[1] The Sixth Circuit often uses the concepts of forfeiture and waiver interchangeably in this context as the cases cited herein demonstrate. The Supreme Court has explained the technical distinction between the two: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or

To reach a jury, the Brenays need to show that the officers' statements were "so far off the mark" as to permit an inference of deliberate or reckless disregard for the truth. *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014) (quoting *Hutsell v. Sayre*, 5 F.3d 996, 1004 (6th Cir. 1993)). In their briefing, the Brenays take issue with two statements in the officers' reports. In both, the officers accuse the Brenays of intervening in the scuffle and trying to pull Brenay, Jr. back into the house. The Brenays insist that "[t]hese facts are simply untrue," and that without them, "the affidavit in support of the arrest warrant would lack probable cause." Appellant Br. 24. But as to whether the officers acted with deliberate or reckless disregard for the truth, the Brenays tell us only that "this [was] a question for the jury." *Id.*

We routinely decline to consider perfunctory arguments of this sort. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (holding that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995))). It is not enough for a party to "mention a possible argument in the most skeletal way" and leave the court to "put flesh on its bones." *Id.* at 995–96 (quoting *Citizens Awareness Network*, 59 F.3d at 293–94). The Brenays were obligated to explain how a reasonable juror could infer the officers' culpability. Fed. R. App. P. 28(a)(8) ("The appellant's brief must contain . . . [the] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]"). But their brief makes no attempt to do so. Instead, they spend several pages reciting the elements of a malicious-prosecution claim, noting that some of those elements were uncontested, and asserting that the officers made false statements. None of those points, however, advances an argument on the

abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). This is forfeiture.

question they have asked this court to review: whether there exists a genuine dispute of material fact as to whether the officers acted with deliberate or reckless disregard for the truth. They leave it to the court to seek out the relevant law, identify the relevant evidence, and develop their argument for them. And indeed, in his thoughtful dissent, Judge Clay does much to develop the argument that the Brenays presumably had in mind. But it is not for the court to search the record and construct arguments. Parties must do that for themselves. *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008).

Demanding this much from the parties is not a new proposition or one that is unique to this court. *See, e.g.*, *Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 F. App'x 370, 374 (6th Cir. 2015) (holding that because a party offered "only conclusory assertions," it "waived its arguments on this front by failing to develop them in its brief"); *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1057 (6th Cir. 2015) (declining to address a claim "[b]ecause it is not our function to craft an appellant's arguments"); *United States v. Hayter Oil Co., Inc. of Greeneville*, 51 F.3d 1265, 1269 (6th Cir. 1995) (finding that defendants had waived their claims when they "d[id] nothing more than make the conclusory assertion that their rights . . . were violated"); *see Citizens Awareness Network*, 59 F.3d at 293 (concluding that a party had waived claims in light of the "sparsity of its allegations and the complete lack of argument or factual support"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) (stating that a "skeletal 'argument'" does not preserve a claim and explaining that "[j]udges are not like pigs, hunting for truffles buried in briefs").

And while it may be tempting to flesh out the parties' arguments for them, it is improper for the courts to do so. *See LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F. App'x 373, 388–89 (6th Cir. 2012) (Thapar, J., dissenting in part). Our system is an adversarial one, and it is up to

the parties to spar with each other on each and every issue. Judges have no role in this fight other than to declare a winner. And if we begin to assist the parties in performing their function, it will quickly usurp ours. If appellate courts roll up their judicial sleeves, scour the record, and develop the relevant arguments and counter-arguments, what is to prevent the parties from submitting a two-page brief stating their legal claims and leaving it to the court to do the rest? There must be a line, and fortunately that line has already been drawn. The Brenays fall on the wrong side of it: Their malicious-prosecution claim is forfeited.

## II.

For the foregoing reasons, we affirm in part and reverse in part. The Brenays may proceed with their unlawful-entry claim against Officer Sierras on remand. But the district court's judgment is affirmed in all other respects.

**CLAY, Circuit Judge, concurring in part and dissenting in part.** I agree with the majority's holding that the district court erred in finding that Officer Troy Sierras was entitled to qualified immunity on Plaintiffs' warrantless entry claim. I write separately, in part, because I disagree with the majority's conclusion that Plaintiffs waived their malicious prosecution claim against both officers on appeal. Moreover, I would hold that the district court improperly granted summary judgment to the officers on the malicious prosecution claim and thus would reverse the judgment of the district court.

Instead of resolving the issue on the merits, the majority states that Plaintiffs waived their malicious prosecution claim by failing to argue the claim on appeal. Because Plaintiffs dedicated only a few pages of their brief to this claim, the majority believes that they failed to follow Federal Rule of Appellate Procedure 28(a)(8), which states that an appellant's brief must contain his or her "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."

I respectfully disagree. While it is true that Plaintiffs could have done a better job presenting their argument as to this claim, the brief is not so lacking in support and development as to consider the argument forfeited or waived. Indeed, Plaintiffs discussed the issue for four pages, throughout which they cited the standard for a malicious prosecution claim and identified sections of the record purportedly showing that elements of the claim are disputed. Plaintiffs also identified statements in the police report that they contend are false. Therefore, Plaintiffs have done enough in their brief for their argument not to be considered forfeited or waived.

In addition, there are significant differences between the cases that the majority cites for the proposition that the argument is forfeited and the situation presented here. In *McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997), we found an argument waived when the plaintiffs failed to

include the elements of their claim in their brief and did not "point[] to evidence in the record that could satisfy these elements." *Id.* at 995. In this case, however, the majority admits that Plaintiffs correctly cited the elements of their malicious prosecution claim, and Plaintiffs identified which statements they contend met those elements.

As another example, in *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442 (6th Cir. 2008), where the plaintiffs dedicated only half a paragraph to a claim, we held that their argument was waived because that paragraph was entirely devoid of citations to either the record or to caselaw. *Id.* at 449. In addition, the argument was waived both in front of the district court and on appeal in that case, inasmuch as the district court noted that the plaintiffs failed to support their argument by pointing to specific evidence in the record. *Magnum Towing & Recovery v. City of Toledo*, Civ. A. No. 04-7671, 2007 WL 2492434, at *11 (N.D. Ohio August 29, 2007). The remaining cases cited by the majority are likewise either inapposite or involve briefing that was substantially less robust than the briefing at issue here. *See, e.g.*, *Elite Int'l Enter., Inc. v. Norwall Grp., Inc.*, 628 F. App'x 370, 374 (6th Cir. 2015) (finding waiver where brief made "only conclusory assertions"); *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1056–57 (6th Cir. 2015) (same where party did not "offer[] any developed argumentation" (internal quotation marks and citation omitted)); *United States v. Hayter Oil Co. of Greeneville, Tenn.*, 51 F.3d 1265, 1269 (6th Cir. 1995) (same where parties made only a "conclusory assertion that their rights . . . were violated").

Furthermore, Plaintiffs' arguments are actually meritorious, and I would reverse the district court's judgment insofar as it granted summary judgment to Officer Sierras and Sergeant Michael Schartow on the malicious prosecution claim. It is clear, upon a review of the record, that the district court's reasoning relies on contested material facts and does not view the facts in

13

the light most favorable to the plaintiff. *See Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 448 (6th Cir. 2002) (stating that, for summary judgment, there must be "no genuine issue as to any material fact," and that "the evidence and all reasonable inferences drawn therefrom [must be] viewed in the light most favorable to the nonmoving party" (quotations and citations omitted)). Therefore, the judgment as to the malicious prosecution claim should be reversed, and that claim should be allowed to proceed to trial.

We have consistently recognized in this Circuit that "individuals have a clearly established Fourth Amendment right to be free from malicious prosecution." *King v. Harwood*, 852 F.3d 568, 582–83 (6th Cir. 2017) (collecting cases). As noted by Plaintiffs, the elements of a malicious prosecution claim asserted under 42 U.S.C. § 1983 are:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty . . . apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (internal quotation marks, citations, and alterations omitted). A police officer can be liable for a Fourth Amendment violation when "his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014) (citing *Sykes*, 625 F.3d at 312).

Plaintiff Dennis Brenay, Sr., was prosecuted for committing the felony offense of resisting or obstructing an officer. Under Michigan law, the charge of resisting an officer involves "withstand[ing], striv[ing] against, or oppos[ing]" an individual conducting official duties. *People v. Morris*, 886 N.W.2d 910, 916 (Mich. Ct. App. 2016) (quotation omitted).

Similarly, obstructing an officer involves "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a).

Brenay, Sr., claims that both Defendants were involved in filing police reports containing false statements that were material to finding probable cause to arrest and prosecute him, and that these statements were deliberately or recklessly made. One such statement is the Essexville Police Report, which was written by an officer who is no longer a defendant in this case, but was approved by Sergeant Schartow, which stated:

> Dennis Sr. again tried to pull the door closed on these officer[s] and Ofc. Sierras was able to reach into the residence and grab ahold of Dennis Jr[.]'s arm. At this point Sgt. Schartow grabbed the door that Dennis Sr. was still trying to close and was able to pull it out of his hand so that officer[s] could get to Dennis Jr. Ofc. Sierras was telling Dennis Jr. that he was under arrest and told him to come outside. During this time Dennis Jr. was trying to pull away from Ofc. Sierras and Dennis Sr. was trying to get in between his son and the officer[s]. Dennis Sr. was trying to push his son back into the house at one point and then tried to push Ofc. Sierras away from his son moments later.

Brenay, Sr., also points to Sierras' police report, which was attached to the affidavit for the arrest warrant, which stated that, after Sierras grabbed Brenay, Jr.,'s wrist, "Brenay Sr. still attempted to shut the door." The report also states that Brenay, Jr.,'s "parents pulled him further into the hallway," after Sierras said that Brenay, Jr., was under arrest.

These affidavits directly contradict Plaintiff's view of the relevant facts. Brenay, Sr., admits that he let go of the door, causing it to start to swing closed, and that, during the scuffle with the police officers, he made physical contact with someone. However, Brenay, Sr., claims that he pushed against either his son or Sierras only because he lost his balance and was attempting to regain it by holding on to someone for support. Notably, Brenay, Sr., is sixty-five years old, weighs 325 pounds, and has arthritis in his knees, which sometimes requires him to use a cane.

15

The pictures painted by the two versions of the relevant events cannot be reconciled. Defendants' version involves active resistance by Brenay, Sr., who was physically capable of simultaneously impeding the progress of two police officers and pushing his son out of the reach of said officers. Brenay, Sr., on the other hand, contends that he fell over when he lost his balance, as he is apt to do, and that any physical interaction between him and either his son or an officer was merely incidental. Viewing the evidence in the light most favorable to Brenay, Sr., and drawing all reasonable inferences from that evidence, the officers' statements were "so far off the mark" as to allow the inference that the statements were both false and deliberately or recklessly made. *Newman*, 773 F.3d at 772 (citing *Hutsell v. Sayre*, 5 F.3d 996, 1004 (6th Cir. 1993)). Therefore, Brenay, Sr., has sufficiently alleged that Defendants deliberately or recklessly made material false representations in their police reports that contributed to the finding of probable cause.

Defendants also argue that, even if the Court were to exclude the statements regarding Brenay, Sr., trying to separate his son from Officer Sierras, there was still probable cause to arrest Brenay, Sr., for obstructing the work of the officers because he interrupted the questioning a few times and closed, or attempted to close, the door twice. This argument, too, is unpersuasive. This Court has previously expressed doubt that asking questions or interrupting an officer can count for an obstruction charge. *See, e.g.*, *Patrizi v. Huff*, 690 F.3d 459, 467 (6th Cir. 2012) (citing *City of Houston v. Hill*, 482 U.S. 451, 455 (1987)). Moreover, the Michigan courts have clarified that "obstructing an officer through a 'knowing failure to comply with a lawful command' requires some physical refusal to comply with a command, as opposed to a mere verbal statement of disagreement." *Morris*, 886 N.W.2d at 916 n.6 (citing *People v. Chapo*, 770 N.W.2d 68, 74 (Mich. 2009)). Indeed, in this case, Brenay, Sr., admitted to interrupting

16

Sierras only twice, both of which allegedly occurred prior to Sierras' attempt to arrest the younger Brenay. Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could conclude that an officer did not have probable cause to arrest Brenay, Sr., for simply interrupting officers while they were interviewing his son.

Similarly, the fact that Brenay, Sr., closed the door to his home cannot establish that he was trying to impede the work of the police. As to the first time when Brenay, Sr., closed the door, Defendants cannot contend that Brenay, Sr., hindered their attempts to arrest Brenay, Jr., as neither Brenay, Sr., nor the officers knew whether Brenay, Jr., was even at home. As to the second time the door closed, Brenay, Sr., testified that he inadvertently allowed the door to close after removing his hand from the door in a gesture of exasperation. Brenay, Sr., also testified that, at the time he made the gesture, he did not know that his son was going to be arrested, meaning he was not actually trying to obstruct any police business. Moreover, Brenay, Sr., had the right to close the door to the police. *See Kentucky v. King*, 563 U.S. 452, 469–70 (2011). Given this interpretation of events, a reasonable jury could find that there was no probable cause to prosecute Brenay, Sr., for resisting or obstructing an officer simply by lawfully closing his front door.

For the foregoing reasons, I disagree with the majority regarding Plaintiffs' waiver of their malicious prosecution claim on appeal. Furthermore, I would reverse the district court's judgment on the malicious prosecution claim, as Defendants were not entitled to summary judgment. Therefore, I respectfully dissent inasmuch as the majority affirms the district court's judgment as to this claim.