BOYCE F. MARTIN, JR., Circuit Judge.
Renee Finnerty appeals an order entered on March 30, 2009 by the United States District Court for the Eastern District of Michigan, granting summary judgment in favor of defendants RadioShack Corporation, Kiosk Operations, Inc., and SC Kiosks, Inc. (collectively referred to as “RadioShack”) on Finnerty’s claims of discrimination, in violation of the Family Medical Leave Act, 29 U.S.C. § 2611, et seq., and Michigan’s Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2102, et seq. The district court, in granting defendants’ motion for summary judgment, concluded that: (1) Finnerty’s supplemental pleading as it related to RadioShack was barred by the statute of limitation; (2) successor liability should not be imposed on RadioShack; and (3) Finnerty’s claims against RadioShack were barred by the equitable doctrine of'laches. As Finnerty’s claims were barred by laches, we AFFIRM the district court’s judgment.
I.
Wireless Retail, Inc. was a privately held national retail chain specializing in the sale of cellular phones and services. Wireless Retail was headquartered in Scottsdale, Arizona and operated over 675 stores, primarily kiosks that operated inside shopping malls and retailers such as Sam’s Club, Wal-Mart, K-Mart, Best Buy, Home Base, and Sears.
Finnerty began her employment with Wireless Retail in October 2000. She was hired as a sales representative and earned $6.50 per hour plus commission. In her role as a sales representative, Finnerty sold cellular phones and other wireless devices in kiosks located in various stores, including Sam’s Clubs. Finnerty resigned after working for Wireless Retail for about two months in order to concentrate on her college studies. By April 2001, Finnerty was once again employed by Wireless Retail and became a store supervisor and, later, a field manager.
Each time she was hired, Finnerty signed a “Co-Employee Notice and Agreement,” stating that she was jointly employed, by Wireless Retail and CNA Uriisource Inc. (“CNA”), a professional employer organization.[1] The Co-Employee Notice and Agreement provided that CNA would pay Finnerty the applicable minimum wage in the event that Wireless Retail failed to pay CNA for the services Finnerty performed. The agreement directed Finnerty to contact CNA’s human *522 resources department regarding discrimination claims arising during the course of her employment.
In March 2002, Finnerty learned that she was pregnant and, according to her deposition, she was required to work longer hours than prior to becoming pregnant. Finnerty testified that the intensity of her workload led her to request a demotion from field manager to store supervisor, which she received on July 22, 2002. Fin-nerty also testified that, even after her demotion, she was still required to work an intense schedule and received no relief despite her requests.
On September 12, 2002, Finnerty contacted Wireless Retail’s human resources department to inquire about the company’s maternity leave policy and was informed that, although Wireless Retail did not have a maternity leave policy, Finnerty would be eligible for leave under the Family Medical Leave Act. Wireless Retail subsequently sent Finnerty information explaining the company’s Family Medical Leave Act leave policy, which required Finnerty to furnish medical certification of a serious health condition. Finnerty’s Family Medical Leave Act leave was to commence on November 1, 2002, but as she did not feel well because of her pregnancy, Finnerty called her field manager and requested that her leave begin on October 26, 2002. Finnerty’s field manager approved her request. Nonetheless, after Finnerty submitted her medical certification on November 4, 2002, Finnerty’s field manager contacted her, informing Finnerty that Finnerty’s employment had been terminated because of three “no-call no shows.”
On July 21, 2004, Finnerty filed suit against Wireless Retail, alleging violation of the Family Medical Leave Act as well as pregnancy discrimination in violation of the Elliott-Larsen Civil Rights Act. On August 26, 2004, Wireless Retail removed the action to federal court.
On October 1, 2004, Wireless Retail entered into an Asset Purchase Agreement with defendant SC Kiosks, Inc., a wholly-owned subsidiary of RadioShack. Pursuant to the Asset Purchase Agreement, Wireless Retail sold certain specified “Purchased Assets” to RadioShack, including fixtures, information systems, training and distribution assets, and inventory “used for the operation of retail kiosks that sell and activate phones pursuant to the Communication Center Kiosk License Agreement, by and between [Wireless Retail] and Sam’s West, Inc.” RadioShack also acquired the lease interest in Wireless Retail’s Arizona headquarters, but sub-leased part of the space back to Wireless Retail, which continued to operate its non-Sam’s Club kiosks independently. Wireless Retail also agreed to terminate its agreement, and RadioShack negotiated its own licensing agreement, with Sam’s Club. Under Section 6.4 of the Asset Purchase Agreement, Wireless Retail agreed to terminate its employees identified in Schedule 3.7, effective September 30, 2004, and Ra-dioShack agreed to offer those employees employment the following day.
Specifically excluded from the liabilities RadioShack assumed were, inter alia, “any liabilities, claims or obligations relating to any employee of [Wireless Retail] and not expressly assumed by [RadioSh-ack] in Section 1.2(a) of the agreement.[2] Other excluded liabilities included “any [[liability arising out of any [proceeding pending” as of the date of the Asset Pur *523 chase Agreement and “any [¡liability arising out of or resulting from [Wireless Retail’s] compliance or noncompliance with any [Ilegal [requirement or [o]rder of any [governmental [a]uthority.” Schedule 3.4 sets forth the pending lawsuits against Wireless Retail, including Finnerty’s lawsuit, which are among the excluded liabilities.
On March 4, 2005, Wireless Retail answered Finnerty’s interrogatories and indicated that an insurance policy existed at the time of the alleged discrimination and that pursuant to the terms of the policy, the insurer would be liable for the payment of any damages awarded in this case. On July 28, Wireless Retail filed a motion for summary judgment, which was denied on January 30, 2006 following a hearing on the motion. After the January 30th hearing, Wireless Retail’s counsel informed Finnerty that Wireless Retail was out of business and that he intended to file a motion to withdraw as counsel, indicating that the company had ceased as an ongoing entity.
On February 10, 2006, Wireless Retail’s counsel moved to withdraw as counsel and Finnerty moved for leave to amend her complaint in order to add RadioShack as a successor corporation. In her motion, Fin-nerty argued that she was first informed on January 30th that Wireless Retail was uninsured with respect to Finnerty’s claim and that Wireless Retail had dissolved. Finnerty requested the amendment because Wireless Retail had sold a portion of its business to RadioShack and successor liability was permitted under the Family Medical Leave Act. Finnerty’s motion was granted on March 24, 2006, and she filed her amended complaint on April 11, 2006.
RadioShack moved for summary judgment on September 14, 2006, arguing that it was not a successor in interest to Wireless Retail for purposes of Finnerty’s discrimination claim, that Finnerty had failed to plead and could not prove a basis for imposing successor liability, and that both of Finnerty’s claims against RadioShack were time-barred. RadioShack’s motion for summary judgment was denied on March 30, 2007. On November 2, 2007, Finnerty moved for partial summary judgment against RadioShack on the issue of successor liability, and RadioShack renewed its motion for summary judgment on January 18, 2008. The magistrate judge issued a Report and Recommendation on August 26, 2008 recommending that Finnerty’s motion for partial summary judgment be granted and RadioSh-ack’s renewed motion for summary judgment denied. RadioShack filed objections to the magistrate judge’s recommendation. On March 30, 2009, the district court rejected the magistrate judge’s recommendation and granted RadioShack’s renewed motion for summary judgment. Finnerty v. Wireless Retail, Inc., 624 F.Supp.2d 642 (E.D.Mich.2009). The district court found, in the alternative, that Finnerty’s claims are time-barred by the applicable statute of limitations, that RadioShack did not constitute a successor in interest to Wireless Retail for the purposes of this litigation, and that Finnerty’s claims are barred by the doctrine of laches. Id. Finnerty timely appealed.
II.
Finnerty claims that her claims are not time-barred because her claim against RadioShack relates back to her claim against Wireless Retail, the RadioShack is a valid successor in interest of Wireless Retail, and that her claims are not barred by laches because she diligently pursued her claim. We will address laches first.
We review “a district court’s resolution of a laches question for an abuse of discretion.” Chirco v. Crosswinds Cmties, Inc., *524 474 F.3d 227, 231 (6th Cir.2007) (citing City of Wyandotte v. Consol. Rail Corp., 262 F.3d 581, 589 (6th Cir.2001)). “To invoke the equitable doctrine of laches, a party must show: ‘(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.’ ” Ford Motor Co. v. Catalanotte, 342 F.3d 543, 550 (6th Cir.2003) (quoting Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc., 270 F.3d 298, 320 (6th Cir.2001)); see also Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). The party asserting the laches defense may be prejudiced “because it would be inequitable, in light of a change in defendant’s position, to allow plaintiffs claim to proceed or because the delay makes it difficult to garner evidence to vindicate his or her rights.” Robins Island Pres. Fund, Inc. v. Southold Dev. Corp., 959 F.2d 409, 424 (2d Cir.1992). Determinations regarding the applicability of a laches defense must be made in light of all the existing circumstances. Czaplicki, 351 U.S. at 533, 76 S.Ct. 946. “[A]ny delay attributable to [a] plaintiff must be measured from a time at which the plaintiff knew or should have known that [the] infringement [of his or her rights] ripened into a provable claim.” Kellogg Co. v. Exxon Corp., 209 F.3d 562, 569-70 (6th Cir.2000).
A brief review of the relevant dates is helpful. Finnerty filed suit against Wireless Retail on July 21, 2004. On October 1, 2004, RadioShack purchased certain assets of Wireless Retail, including its Sam’s Club kiosks, at which Finnerty was working before her termination by Wireless Retail. On March 31, 2005, Finnerty’s counsel deposed Deena Maraño, Wireless Retail’s human resources manager. The relevant colloquy is as follows:
Q: Okay. Have you had any changes since the sale of Wireless Retail to Radio Shack?
A: In what respect?
Q: Any changes in your responsibilities or the systems or anything like that?
A: My responsibilities are a little bit changed because once the sale occurred then, of course, Tammy Lee is no longer with the company, she went with that sale, so Employee Relations now rolls up under myself.
Q: Okay. But that has only been recently?
A: Yes, since the sale of the company.
Finnerty, 624 F.Supp.2d at 665-66 (emphasis in original). On January 30, 2006, Wireless Retail’s counsel informed Finnerty and the court that Wireless Retail was out of business, the relevant insurance policy had lapsed and could not cover the potential liability from the Finnerty case, and it no longer intended to defend the case. On February 10, 2006, less than two weeks later, Finnerty filed a motion for leave to amend her complaint and to add RadioShack as a defendant. After the court granted the motion on March 24, 2006, Finnerty filed the amended complaint on April 11, 2006. RadioShack received service on April 25, 2006.
Finnerty argues that it was not until January 30, 2006, when Wireless Retail’s counsel informed her that Wireless Retail was out of business and that the company had ceased as an ongoing entity, that she had notice of a possible claim against Ra-dioShack. And, were this the entire story, she would be correct that laches should not apply to bar her claim, as she filed her motion to amend the complaint immediately thereafter.
However, it is clear from the record that Finnerty and her counsel were aware of the sale substantially prior to January 30th. Additionally, at the Maraño deposition on March 31, 2005, Finnerty’s counsel initiated a discussion of the sale; so the *525 sale was not new information received from Maraño or any other Wireless Retail representative that day. The fact that Finnery’s counsel knew to ask this question at the deposition implies that, not only was she aware of the sale on March 31, 2005, nine months before she claims to have been aware, she must have had some knowledge of the sale before that date in order to formulate the question. Moreover, in the Maraño deposition, Finnerty received confirmation that the sale had gone through, should she have been in doubt, and learned that there had been staffing changes such that some former staff members went to RadioShack as part of the sale. This should have put Finnerty and her counsel on notice to investigate whether Finnerty would have been among the Wireless Retail employees now employed by RadioShack had she not been fired.
Thus, by March 31, 2004, Finnerty and her attorney knew or should have known that Finnerty had a potential claim against RadioShack and that she had a duty to investigate, regardless of the assurances of Wireless Retail that Finnerty’s claim would be covered by the terms of Wireless Retail’s insurance policy, now lapsed, and the fact that Wireless Retail continued to defend against the suit until the dissolution of the company. Her subsequent delay in amending her complaint after learning about the sale was unreasonable.
Moreover, this delay prejudiced RadioShack. As the district court noted, Finnerty’s own arguments about the difficulties involved in finding Wireless Retail’s former employees and the present inability of Wireless Retail to indemnify RadioShack as to this claim that they make in their arguments for successor liability demonstrate a finding of prejudice to RadioSh-ack. It would be at. least as difficult for RadioShack to find these documents and witnesses this late in the case as it was for Finnerty, during the appropriate, within-the-statute-of-limitations, discovery period. Thus, Finnerty’s delay has prejudiced Ra-dioShack’s ability to defend the case on the merits or to seek indemnity from Wireless Retail.
Therefore, Finnerty unreasonably delayed in bringing her claim against Ra-dioShack and was not diligent in pursuing her claims. This delay prejudiced Ra-dioShack’s ability to defend against her claims, originally brought against Wireless Retail. Accordingly, based on the record before us, we cannot find that the district court abused its discretion in determining that Finnerty’s claim is barred by the doctrine of laches.[3]
III.
We AFFIRM the. district court’s grant of summary judgment.

. A professional employer organization typically provides personnel and human resources management services to its clients. See Ball v. Transcon Employment Co., No. 1:04 CV 00578, 2006 WL 462435, at *1 (S.D.Ohio Feb.24, 2006).

. In Section 1.2(a), RadioShack assumes Wireless Retail’s liabilities and obligations under the Seller Contracts, a term defined by reference to other contractual provisions that do not implicate the instant action.

. Because we find that the district court did not abuse its discretion in finding Finnerty’s claim barred by the doctrine of laches, we need not examine whether the district court erred in its alternative findings that Finnerty’s claim failed based on the statute of limitations and that RadioShack was not a successor in interest.