**E-FILED**
**CNMI SUPREME COURT**
E-filed: Dec 12 2025 04:32PM
Clerk Review: Dec 12 2025 04:33PM
Filing ID: 77984055
Case No.: 2024-SCC-0004-CIV
Judy Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**WON BAE SHON,**
*Plaintiff-Appellant,*

*v.*

**HEE JONG CHOO, SOO WOAN JUN, YAN HUA LI, JING ZHU SUN, LAN LAN WANG, AND DOES ONE TO FIVE,**
*Defendants-Appellees.*

**Supreme Court No. 2024-SCC-0004-CIV**

---

**SLIP OPINION**

**Cite as: 2025 MP 12**

Decided December 12, 2025

————————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

————————

Superior Court Civil Action No. 15-0018-CV
Presiding Judge Robert C. Naraja

————————

CASTRO, C.J.:

¶ 1     This appeal concerns whether laches can bar a quiet title claim involving property in As Matuis. The court below held that Appellant Won Bae Shon delayed unreasonably after he should have known of a fraudulent transfer. The Appellant argues that his suit, filed within the statutory period, was timely as a matter of law and that the court's reliance on laches was misplaced. Because equity cannot override a timely legal claim absent extraordinary circumstances, we REVERSE and REMAND for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2     In 2008, Appellant Won Bae Shon ("Shon"), a citizen of South Korea, traveled to Saipan with his family. His wife's cousin, Soo Woan Jun ("Jun"), advised him that investing $150,000 would qualify him for permanent residency. Later that year, Shon purchased a fifty-five–year leasehold interest in property located in As Matuis for $100,000, intending to spend an additional $50,000 on renovations. The property was placed under a newly formed corporation, Taemyoung Corporation, with Shon as its sole shareholder.

¶ 3     After returning to South Korea, Shon left Jun in charge of the corporation and the property. In 2009, Shon wire-transferred $50,500 to Jun and instructed him to deposit the funds into the corporate bank account. When Shon visited Saipan that December, he learned the account was almost empty. Jun signed a written statement admitting he had taken $40,500. Shon did not contact law enforcement and returned to Korea without removing Jun from the corporation. Before leaving, Shon told Jun to "get his hands off" the Taemyoung Corporation and the As Matuis property.

¶ 4     Between 2010 and 2011, Jun executed documents transferring the leasehold. In March 2011, he transferred the property to Appellee Lan Lan Wang ("Wang") as repayment for a loan. Wang invested approximately $30,000 in repairs, advertised the property for sale on local television, and posted for sale signs on the property. In December 2012, she sold the leasehold to Appellee Yan Hua Li ("Li") for $110,000. Li recorded the lease assignment in March 2013, invested an additional $40,000 in renovations, and moved into the home with her family in January 2014.

¶ 5     Shon remained in Korea throughout this time. In early 2014, while exploring the possibility of selling the property, he learned that there appeared to be someone living in the house. He traveled to Saipan, retained an investigator, and discovered that the leasehold had been transferred without his knowledge or authorization. In January 2015, Shon filed a lawsuit seeking to quiet title. He also asserted claims for slander of title and unjust enrichment against Wang and a claim for trespass against Li.

¶ 6     The court determined that the leasehold transfers were based on forged documents and were therefore void *ab initio*. Although Shon retained legal title to the property, the court barred his claims under the equitable doctrine of laches.

It found that Shon had unreasonably delayed in asserting his rights, and that Wang and Li had suffered prejudice as a result of their investments and continued occupancy. Judgment was entered for Wang and Li. Shon now appeals, asserting that laches is unavailable where a claim is timely under the statute of limitations, that he acted quickly once he learned of the forged transfers, and that neither Wang nor Li suffered the sort of prejudice necessary to sustain an equitable bar.

## II. JURISDICTION

¶ 7 We have appellate jurisdiction over final judgments and orders of the Commonwealth Superior Court. 1 CMC § 3102(a).

## III. STANDARD OF REVIEW

¶ 8 Whether laches is available as a matter of law is reviewed de novo, while the trial court's decision to apply laches to the facts is reviewed for an abuse of discretion. *In re Estate of Rios*, 2008 MP 5 ¶ 8.

## IV. DISCUSSION
### A. The Equitable Doctrine of Laches

¶ 9 Laches is an equitable defense that bars a claim brought after an unreasonable and prejudicial delay. To establish laches, a party must prove two elements: (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant," and (2) "the delay operated to the prejudice or injury of the defendant." *Rios v. Marianas Pub. Land Corp.*, 3 NMI 512, 524 (1993).

¶ 10 There is no fixed rule for what constitutes an unreasonable delay. The inquiry is fact-specific and depends on the circumstances of each case. *See id.* at 525. Statutes of limitation, however, reflects the Legislature's definition of timeliness. Under 7 CMC § 2502(a)(2), actions to recover land must be filed within twenty years after the cause of action accrues, while other civil claims fall under the six-year catch-all in 7 CMC § 2505. Shon filed his quiet-title action in 2015, well within the applicable period. Nevertheless, the trial court found the delay unreasonable and applied laches.

¶ 11 A claim filed within the limitation period carries a presumption of timeliness, overcome only in extraordinary circumstances warranting equitable intervention. Because the trial court applied laches without finding extraordinary circumstances, it erred as a matter of law. Both unreasonable delay and resulting prejudice must be shown; the absence of either defeats the defense. *Rios*, 3 NMI at 525. Because the law deems the filing timely, we need not consider whether Wang and Li suffered prejudice. We must instead address how statutes of limitation constrain the equitable reach of laches and under what narrow circumstances the defense may bar a timely claim.

### B. Statutes of Limitation and the Presumption of Timeliness

¶ 12 Statutes of limitation reflect legislative judgments about how long claims remain viable. They are not mere procedural devices but "vital to the welfare of society," balancing defendant's interest in finality against a claimant's right to

relief. *Gabelli v. SEC*, 568 U.S. 442, 448–49 (2013) (*quoting Wood v. Carpenter*, 101 U.S. 135, 139 (1879)). Fixed limitation periods embody the Legislature's determination of how long a claimant may reasonably delay before a claim becomes stale.

¶ 13    As a judicially created doctrine, laches must operate in harmony with these statutory limits. This Court has recognized that a presumption of laches arises only after the statute of limitations has expired. *Rios*, 3 NMI at 524. Conversely, compliance with a statute of limitations creates a presumption of timeliness. Statutory limitations thus provide the controlling benchmark for assessing delay. To hold otherwise would allow courts to override legislative policy, threatening the separation of powers. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 335 (2017) (explaining that applying laches within a limitations period "would give judges a legislation-overriding role that is beyond the Judiciary's power"); *Petrella v. MGM*, 572 U.S. 663, 667 (2014) (holding "courts are not at liberty to jettison Congress' judgment on the timeliness of suit").

¶ 14    This Court's precedent defines the limits of judicial discretion in applying laches. In *In re Estate of Rios*, 2008 MP 5 ¶¶ 12–18, the Court held that laches cannot be used to create a time bar where the Legislature has chosen none, reversing dismissal of an heirship petition filed more than twenty years after the decedent's death. Because heirship claims often arise long after death, the Legislature chose not to impose a limitation period for probate matters. *Id.* ¶17. Courts may apply laches to prevent unfair prejudice, but they may not use their equitable power to invent deadlines the Legislature never established. *Id.* The same principle governs *Estate of Rogolifoi v. Estate of Rogolifoi*, 2024 MP 4 ¶¶ 36–46, where the Court declined to apply laches after determining that the statutory period for land recovery had expired. The Court explained that an equitable defense serves no function when a claim is already time-barred by statute. *Id.* ¶ 46. Together, these decisions reaffirm that timeliness is defined by statute, not by judicial discretion.

¶ 15    Federal authority uniformly supports this view. The Ninth Circuit has held that laches is "rarely justified" when a claim is filed within the statutory period, emphasizing that a congressionally enacted limitation is the definitive measure of timeliness. *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) (*citing Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946)). The Eleventh Circuit similarly reversed the dismissal of a timely copyright claim and cautioning courts not to encroach upon the Legislature's authority to define limitation periods. *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1320 (11th Cir. 2008). When a statute prescribes a specific time for bringing suit, that legislative judgment controls, and courts may not invoke laches to create a different measure of timeliness.

¶ 16    Here, the trial court reasoned that Shon's presumption of timeliness "may be overcome" by evidence that he "reasonably should have known" others were occupying his property. *Shon v. Choo*, Civ. No. 15-0018-CV (NMI Super. Ct.

Oct. 18, 2019) (Order Denying Plaintiff's Second Motion for Summary Judgment at 4). That reasoning misapplies the ordinary laches standard, which guards against undue delay where no statutory deadline exists. When a claim is filed within the statutory period, timeliness is established as a matter of law. Equity may override that determination only in extraordinary circumstances, and never to replace legislative judgment with judicial discretion.

### C. The Extraordinary Circumstances Exception

¶ 17    The presumption of timeliness is not absolute. Equity permits a narrow exception where a claimant's conduct is so inequitable that enforcing the claim would offend the very principles of fairness the statute seeks to uphold. *C.f. Petrella*, 572 U.S. at 686. The United States Supreme Court has described such cases as "extraordinary circumstances"—situations in which a delay, though technically within the statutory period, has produced consequences so severe as to warrant equitable intervention. *Id.* at 685.

¶ 18    The *Petrella* Court identified two lower-court decisions illustrating the rare conditions under which equity may bar a timely claim. In *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 230 (6th Cir. 2007), the plaintiffs knew that the defendants were constructing a housing development using architectural designs that infringed their copyrights but waited to sue until more than 160 units were completed and over 100 occupied. Although the claim was timely, the court held that ordering demolition of the occupied development would be inequitable, as plaintiffs' knowing inaction had allowed substantial reliance and hardship to accrue to both defendants and innocent third parties. *Id.* at 236. Similarly, in *New Era Publ'n Int'l v. Henry Holt & Co.*, 873 F.2d 576 (2d Cir. 1989), a copyright holder delayed seeking an injunction for two years, until after the allegedly infringing book had been printed. The Second Circuit held that laches barred the timely claim because halting publication at that stage would have caused "severe prejudice" that earlier action could have prevented. *Id.* at 584. These cases exemplify the exceptional circumstances in which equitable considerations may justify laches despite the claim's timeliness under statute.

¶ 19    The Ninth Circuit adopted the same approach in *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001), holding that laches is justified in cases of "extraordinary delay and extraordinary prejudice." There, the plaintiff waited over thirty years to assert co-ownership rights to the James Bond films, during which the defendants invested over a billion dollars in the franchise. *Id.* at 955–56. The court explained that delay becomes unreasonable when a plaintiff strategically withholds suit to see whether a defendant's expenditure of large sums of money will succeed and only proceed after the investment has become a success, thereby speculating at the defendant's expense. *Id.* at 957. It further clarified that while laches does not shield a willful infringer who knowingly violates another's rights, it remains available to defendants who acted in good faith or under a reasonable belief of ownership. *Id.*

¶ 20    This rule was refined in *Beaty v. Selinger (In re Beaty)*, 306 F.3d 914 (9th Cir. 2002). Unlike *Danjaq*, the five-year delay in *Beaty* reflected a legitimate

strategic choice by the plaintiff to await clarification of the law. *Id.* at 927. The Ninth Circuit rejected the notion that a litigant acts inequitably by waiting for the law to evolve in their favor, emphasizing that equity does not punish prudence. *Id.* When a claim is filed within the statutory period, the defendant bears a heavy burden to show extraordinary circumstances and a compelling reason why equity should override legislative judgment. *See id.* at 926. Ordinary delay or conclusory statements about the loss of witnesses will not suffice. *Id.* at 928. Clear evidence of specific and particularized prejudice must be shown to justify applying laches before the statute of limitations expires. *Id.* Finding no such proof, the Ninth Circuit reversed, holding that the defendant did not meet the heavy burden of proving extraordinary circumstances. *Id.*

¶ 21    Recent decisions in the Ninth Circuit further clarify the boundary between permissible delay and inequitable inaction. In *Ramirez v. Navarro*, 2024 U.S. App. LEXIS 10419 (9th Cir. Apr. 29, 2024), the court affirmed summary judgment on laches, holding that plaintiffs' nine-year delay in bringing trademark claims, with a statute of limitations of four years, despite actual knowledge of the alleged infringement was unreasonable and caused substantial prejudice to the defendant, who had openly relied on the disputed mark for years. The court viewed the plaintiffs' knowing and prolonged inaction as the precise inequity laches was designed to prevent, applicable only by "a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence." *Id.* at *3.

¶ 22    This Court has not previously confronted an "extraordinary circumstances" case. Still, the federal framework aligns with the principles with our own precedent. As *Rios* explained, "[f]inding laches is not an arbitrary and unjust punishment. Rather, it is rooted in presumptions of appropriate human behavior." *In re Est. of Rios*, 2008 MP 5 ¶ 10. The doctrine rests on the ordinary expectation that those aware of a wrong will act within a reasonable time. When a claimant's prolonged silence induces reliance or alters circumstances, laches prevents the resulting unfairness. The question is not how long the delay lasted, but whether it departed so far from expected behavior that it caused concrete prejudice.

¶ 23    Accordingly, applying laches remains a matter of judicial discretion empowering courts to prevent inequitable results caused by strict adherence to statutory deadlines. We therefore adopt the federal framework as the governing rule in the Commonwealth. Laches may bar a timely claim only when two conditions are met: (1) the claimant had actual knowledge of the right asserted, and (2) despite that knowledge, engaged in egregious or tactical delay causing concrete prejudice. Outside such rare circumstances, the statutory limitation periods remain the definitive measure of timeliness, and equity must yield to legislative judgment.

### D. No Extraordinary Circumstances Shown

¶ 24    The record reveals no extraordinary circumstances warranting equitable intervention. The trial court reasoned that Shon "should have known" of the forged transfers years earlier because the assignments were publicly recorded,

the property was visibly renovated and advertised for sale, and Shon had "ample opportunity" to monitor his affairs in Saipan. *See* Findings of Fact and Conclusions of Law at 14. Based on these facts, the court held that Shon's failure to investigate after Jun's earlier theft of funds amounted to an "unreasonable and inexcusable delay."

¶ 25    That reasoning misapplied the controlling standard. The trial court relied on the ordinary two-part laches test, which governs untimely claims where constructive notice is enough to satisfy unreasonable delay. Within the statutory period, however, laches may bar a claim only where the plaintiff had actual knowledge of the right asserted and deliberately delayed to the defendant's detriment. *See Danjaq,* 263 F.3d at 954–56; *Beaty,* 306 F.3d at 926. "Actual knowledge" requires direct awareness of the facts giving rise to the claim, not merely what a party could have discovered through greater diligence. *See* 5 CMC § 1201(25).

¶ 26    The cases that apply this standard show what actual knowledge looks like. In *Chirco*, the plaintiffs obtained the infringing plans themselves and later received the official development plans submitted to local authorities. 474 F.3d at 230. They had clear awareness of the infringement yet took no action. In *New Era*, correspondence from the plaintiff's attorney showed the plaintiff knew the book was about to be released but waited nearly two years after publication to file suit. 873 F.2d at 577.

¶ 27    Nothing similar occurred here. Shon learned of the forgery in early 2014 when his agent reported that another person was living in the property. He immediately retained an investigator, confirmed the forgery, and filed suit in January 2015. At most, the trial court identified evidence of inattention. Neither public records nor visible renovations establish actual knowledge of the forged transfers, and Shon's failure to monitor land records or retain a local agent does not convert constructive notice into actual knowledge. Expanding laches to penalize such inattention would distort the doctrine by imposing a permanent duty of surveillance on absent landowners.

¶ 28    This record shows no deliberate or inequitable delay. Once Shon became aware of the fraud, he acted to protect his rights. Therefore, under the governing framework, this case does not satisfy the extraordinary circumstances necessary for laches to overcome the statutory presumption of timeliness.

## V. CONCLUSION

¶ 29    A claim filed within the statutory period is presumed timely and may be barred only in extraordinary cases. By applying laches where the doctrine does not lawfully reach, the trial court erred as a matter of law. We therefore REVERSE and REMAND with instructions to enter judgment quieting title in Shon and to conduct further proceedings limited to unjust enrichment and any remaining claims consistent with this opinion.

So Ordered this 12th day of December, 2025.


/s/
ALEXANDRO C. CASTRO
Chief Justice


/s/
JOHN A. MANGLOÑA
Associate Justice


/s/
PERRY B. INOS
Associate Justice


COUNSEL

Michael W. Dotts, Saipan, MP, for Appellant.

Mark Scoggins, Saipan, MP, for Appellee Li.

Robert T. Torres, Saipan, MP; Charity R. Hodson, Saipan, MP, for Appellee Wang.

NOTICE

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of any discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, e-mail Supreme.Court@NMIJudiciary.gov.*

E-FILED
CNMI SUPREME COURT
E-filed: Dec 12 2025 04:32PM
Clerk Review: Dec 12 2025 04:33PM
Filing ID: 77984055
Case No.: 2024-SCC-0004-CIV
Judy  Aldan



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**WON BAE SHON,**
*Plaintiff-Appellant,*

*v.*

**HEE JONG CHOO, SOO WOAN JUN, YAN HUA LI, JING ZHU SUN,
LAN LAN WANG, AND DOES ONE TO FIVE,**
*Defendants-Appellees.*

---

**Supreme Court No. 2024-SCC-0004-CIV**
Superior Court No. 15-0018-CV

**JUDGMENT**

Plaintiff-Appellant Won Bae Shon ("Shon") appealed the Superior Court's Judgment, holding that his timely-filed quiet title claim was barred by laches. For the reasons set forth in the accompanying opinion, 2025 MP 12, the Court REVERSES the lower court's judgment and REMANDS with instructions to enter judgment quieting title in Shon and to conduct further proceedings limited to unjust enrichment and any remaining claims consistent with the opinion.

ENTERED this 12th day of December, 2025.


 /s/
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
JUDY T. ALDAN
Clerk of Court